## GALLUP *v.* CITY OF SAGINAW.

1. CONSTITUTIONAL LAW—STATUTES—MUNICIPAL CORPORATIONS—
   CHARTERS—AMENDMENT.

   Act No. 203, Pub. Acts 1911, authorizing the amendment of
   charters not framed under the new Constitution, is invalid
   in its entirety.  *Attorney General, ex rel. Vernor,* v. *Detroit
   Common Council,* 168 Mich. 249 (133 N. W. 1090).

2. SAME—SAGINAW CHARTER—CHARTER COMMISSION.

   Proceedings for the amendment of the charter of the city of
   Saginaw, begun under Act No. 279, Pub. Acts 1909, not con-
   ducted in pursuance of the subsequent invalid law, cannot
   be enjoined by a bill in equity.

3. SAME.

   A charter, so adopted, repeals the pre-existing charter of the
   city without awaiting any future enactment of the legis-
   lature.

4. SAME.

   The municipal corporation cannot exist independent of its
   charter; framing of such instrument being a necessary step
   in the process of creating an incorporated city.

5. SAME—LOCAL LEGISLATION.

   Upon electing to adopt a new charter in pursuance of the
   statute and Constitution, and upon the completion of the nec-
   essary steps for the adoption thereof, the constitutional
   power of local legislation attaches to the municipality.

Appeal from Saginaw; Searl, J., presiding.   Submitted
April 10, 1912.   (Docket No. 85.)   Decided May 4, 1912.

Bill by George Gallup against the city of Saginaw and
others for an injunction to restrain defendant from revis-
ing its charter.   From a decree for defendants, complain-
ant appeals.   Affirmed.

*Gallup & Gallup* (*G. W. Davis,* of counsel), for ap-
pellant.

*A. Elwood Snow,* for appellees.

STEERE, J.   This proceeding involves the right of the city of Saginaw, Mich., to revise its charter under the so-called "Home Rule" act, being Act No. 279, Pub. Acts 1909, which was amended by Act No. 203, Pub. Acts 1911.   The question is raised by application for an injunction to restrain said city and certain of its officials from expending any portion of an appropriation of $10,000 made to defray the expenses of such revision, and to enjoin holding an election for the purpose of voting on the adoption of any proposed charter.   Complainant, a resident taxpayer of said city, filed this bill of complaint, setting forth by proper pleading the various facts necessary to present the questions involved and asking an injunction for the purpose stated.   Defendants filed an answer containing denial and allegations sufficient to raise the issue, and, after replication, the case was brought to hearing in the circuit court of Saginaw county, on the pleadings; there being no material questions of fact in dispute.   On the hearing, complainant's prayer for an injunction was denied, and he has appealed the case to this court for review.

The city of Saginaw now maintains its corporate existence under Act No. 566 of the Local Acts of 1905.   Early in 1911 proceedings were initiated to revise the city's charter under the provisions of said "Home Rule" act, which prescribes the course to be followed in such cases. On the 16th day of January, 1911, the common council of the city of Saginaw adopted a resolution as follows:

"Resolved, that the question of having a general charter revision be submitted at the municipal election to be held April 3, 1911, to the electors."

Pursuant to said resolution, an election was held in said city on the 3d day of April, 1911, and, as a second question embodied in the regular notice of a general State election, the following question was submitted to the electors of said city:

"Shall the city of Saginaw generally revise the charter

under Act No. 279 of the Public Acts of the year 1909, in accordance with the provisions of said act?"

A majority of the electors voted affirmatively on said question, and it was properly declared carried. On April 17, 1911, the common council of said city adopted the following resolution:

"Resolved, that the date for the election of commissioners to revise the charter of the city of Saginaw be and is hereby fixed by this council upon Tuesday, November 7, 1911."

On November 7, 1911, in pursuance of said resolution, an election was held in the city of Saginaw, at which 23 persons were elected as commissioners to revise the city charter, being one from each ward and three at large. The board of estimates of the city of Saginaw, in making up the budget for defraying expenses and running the city government for the year 1911, included as one of the items of said budget the sum of $10,000 to pay the expenses of elections for the revision of the charter and a *per diem* to the commissioners, which sum was voted by the common council of the city for such purpose and was included in the general tax roll of the city for 1911. Most, if not all, of this amount has been collected in the regular course of collecting taxes. A portion of it is now in the city treasury, and a portion has already been expended in paying election expenses, commissioners' salaries, printing expenses, and the cost of supplies purchased for the use of such commissioners.

In support of his application for an injunction, complainant urges the following propositions and objections against the contemplated revision:

" (1) The city as an existing municipality was created by and derives all of its present rights and powers from a local law enacted by the legislature in 1905 under the Constitution of 1850.

" (2) The city of Saginaw, as a municipal corporation, cannot be dissolved by its own acts, or by its own acts repeal its present charter.

" (3) The framing and adopting of a charter is not within the meaning of the words to 'incorporate' as used in the Constitution, nor is the making of a charter any part of the acts of incorporating a city. Under the Constitution, the power to incorporate is vested in the legislature, and the charter-making power is vested in the electors of the city. The incorporation of a city must precede the making of its charter.

" (4) Under what conditions a city may acquire the power to make its own charter, and all laws relating to its municipal concerns.

" (5) The legislature has not enacted a general law for the incorporation of cities which it intended should apply at once to existing cities or to the reincorporation of existing cities.

" (6) Act No. 203 of the Public Acts of 1911 is unconstitutional and void.

" (7) The provisions of Act No. 279 of the Laws of 1909, having reference to the making of a charter and the adoption, revision, and amendment thereof, relate to such charters as may be made by the electors of a city when incorporated under that act, and do not refer to laws or charters which are laws enacted by the legislature as those which may be revised or amended by the electors of a city.

" (8) To revise is to review and amend if desired, and the use of the word 'revise,' in said Act No. 279, and the words 'general revision,' mean to make amendments generally."

Act No. 203, Pub. Acts 1911, was manifestly passed for the purpose of authorizing piecemeal amendment of city charters. In *Attorney General, ex rel. Vernor*, v. *Detroit Common Council*, 168 Mich. 249 (133 N. W. 1090), it was held that said act is unconstitutional in so far as it authorizes the amendment of existing charters in advance of general revision. At the hearing of this case in the trial court the learned circuit judge correctly found the act unconstitutional and void in its entirety, saying:

" The real purpose for which it was passed having failed, the entire act must fail with it."

Counsel for defendant concedes that the trial court was

right in its conclusions that Act No. 203 of the Public Acts of 1911 is unconstitutional and void, but urges that the proceedings for a charter revision were begun and have since been conducted according to the provisions of the original act of 1909. This concession disposes of much that has been well presented and ably argued in complainant's brief.

Complainant's further objections center on the proposition that the general law of 1909, for incorporation of cities, does not authorize any previously incorporated city, deriving its rights and powers from a special act of the legislature, to repeal a charter so granted and dissolve by its own acts, for the reason that, by the Constitution, power to create municipal corporations is still vested in the legislature only, although its former power to frame charters for them has been taken away and given to the cities themselves; to incorporate and frame a charter being now two separate and distinct functions, the former belonging to the legislature, and the latter to the city.

The vital question raised by complainant—the right of a previously incorporated city to revise its charter under the general law of 1909—has twice been considered by this court. *Jackson Common Council* v. *Harrington*, 160 Mich. 550 (125 N. W. 383); *Attorney General, ex rel. Hudson*, v. *Common Council of City of Detroit*, 164 Mich. 369 (129 N. W. 879).

It is urged that the significance of this radical constitutional change, separating the power to incorporate from the power to create a charter, has not been given due consideration, and that section 2 of the act of 1909 has been ignored. The act was passed in obedience to a mandate of section 20, art. 8, of the Constitution. The framers of the Constitution, in departing from the old order of things and providing for what is popularly known as "home rule" or "freeholder's charters," thereby granting autonomy to municipalities, did not deem it wise to make the constitutional provision on the subject self-executing, but required a preliminary, general law to be passed, outlining

and defining the course to be followed, within certain limits, delineating the sphere of municipal action in comprehensive terms. The new system is one of general grant of rights and powers, subject only to certain enumerated restrictions, instead of the former method of only granting enumerated rights and powers definitely specified. We must assume the act was passed with that intent and construe it accordingly.

By section 1 of said act, "each organized city shall be a body corporate;" and by section 2, "each city now existing shall continue with all its present rights and powers until otherwise provided by law." Section 18 provides for revision of charters. The first sentence is as follows:

"Any city desiring to revise its charter shall do so in the following manner, unless otherwise provided by charter."

It is not claimed there is in the charter of the city of Saginaw anything antagonistic to such a course.

Section 21 of article 8 of the Constitution provides:

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt, and amend its charter, and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State."

In *Jackson Common Council* v. *Harrington, supra,* on application for mandamus to compel the city recorder to give official notice of a resolution of the common council declaring for a general revision of the charter, the writ was granted, upholding the right of previously incorporated cities to revise their charters under section 18 of said act. It was there said:

"We find that the new Constitution, article 8, § 20, provides that the legislature 'shall provide by a general law for the incorporation of cities,' etc. Section 21 provides:

" 'Under such general laws, the electors of each city and village shall have power and authority to frame, adopt, and amend its charter,' etc.

"It is to be noticed that the foregoing provisions of the Constitution are mandatory, and it is obvious that Acts Nos. 278 and 279, the first relating to villages, and the second to cities, were passed by the legislature of 1909 for the express purpose of carrying out the constitutional mandate. We are left in no doubt, therefore, as to the *legislative intent.* It intended to, and did, pass a general law, giving to the electors of cities power to frame, adopt, and amend charters. To that act it gave the title under consideration. It provides for the 'incorporation of cities.' What cities? Obviously *all* cities—as well those already incorporated as those not yet incorporated, since there are no words of qualification or limitation. Every incorporated city must have a charter. Its charter is the definition of its rights and obligations as a municipal entity, so far as they are not otherwise legally granted or imposed. The very act of incorporation, therefore, necessarily includes the idea of a charter and the power to frame and adopt one. If the framing and adoption of a charter *in toto* is fairly within the meaning of the word 'incorporation,' and we believe it necessarily is so, it seems clear that the revision of a charter already adopted is likewise within that meaning, upon the principle that the greater includes the less."

We do not think this language ignores the fact that to create a valid and perfect municipal corporation two distinct legislative authorities must act—the legislature of the State to initiate the corporate entity, and the city, under its legislative power conferred by the new Constitution, to supplement and complete by framing its charter. We do not understand that the fundamental principles of law applicable to municipal corporations are changed by a change in the manner of creating such corporations or by dividing the authority to create them. The two legislative powers must co-operate to bring about the result. We are unable to conceive of a valid municipal corporation without a charter, or a municipal charter without a corporation; a combination of the two makes the corpora-

tion, and framing or revising the charter is part of the necessary process of incorporating a city.

The provisions of section 2 of said act have not been overlooked; neither do we think the language used in *Attorney General, ex rel. Hudson*, v. *Common Council of City of Detroit, supra,* can be construed as contradicting the foregoing. In the latter case it was held that previously incorporated cities could not amend their charters piecemeal, but revision must precede amendment. *Jackson Common Council* v. *Harrington* was cited in the following reaffirming language:

"We have held that the title of Act No. 279, Pub. Acts 1909, is broad enough to include the revision of existing charters. * * * It is, of course, apparent that any city incorporating under Act No. 279 must include in its charter the compulsory provisions of section 3 of the act and the restrictive provisions of section 5. * * * In cases of cities desiring a general revision of their existing charters under section 18 of the act, a charter commission is also provided for to frame the revised charter for submission to the electors; and we cannot doubt that it was the intention of the legislature to require that such revised charter should also contain the compulsory and restrictive provisions referred to."

In discussing proposed amendments of existing city charters by piecemeal, the court said:

"At the very outset of the act it is provided:

"'SEC. 2. Each city now existing shall continue with all its present rights and powers until otherwise provided by law.'

"'Until otherwise provided by law' can scarcely be said to refer to subsequent sections of the act itself, but must be held to refer to some future law."

Counsel for complainant construes this language as meaning some future law to be enacted by the legislature of this State, implying thereby that in the meantime all cities incorporated prior to the enactment of the law in question must remain *in statu quo*—powerless to make any change in their charters.

We cannot agree with this construction of the law. Such was not the intent of the language quoted. We have noted that section 21, art. 8, of the Constitution, gives a city distinct and independent legislative power through its regularly constituted authority to pass *all laws* * * * relating to its municipal concerns. When the legislature of the State, by a local act, conferred upon the city rights and powers, it had legislative authority under the old Constitution with which it is not now invested, for under the new Constitution that power belongs exclusively to the city itself. Now, the city, in framing or revising its charter, which is in effect its Constitution, and in passing laws relating to municipal concerns, can, by its constitutional legislative authority, change existing rights and powers and thus *otherwise provide by law*, subject only to the Constitution and general laws of the State; and in the act under consideration the legislature in furtherance thereof also has provided by section 24 that as soon as the revised charter of a city has been adopted by its electors it "shall thereupon become law."

The language quoted is not inconsistent with what had been previously said touching authority given by the act to revise existing charters. It simply declared that subsequent sections of the act did not operate automatically to change the rights and powers of an already incorporated city.

Act No. 279, Pub. Acts 1909, was passed in obedience to requirements of the new constitutional project for the legislature to abdicate its unlimited powers to interfere in strictly local affairs and to prescribe a sphere of municipal action, in local legislation and management, into which it should not intrude.

In construing said act it must be assumed that there was an honest intent on the part of the lawmakers to frame a law to that end. To make this law applicable only to prospective cities yet to be organized, comparatively few and insignificant so far as can be foreseen, and to tie the hands of all the many and important cities now

in existence, and incorporated, until the legislature, in its discretion, at some future day may deign to act, would be subversive of, and practically defeat, the object of the law. To suspend the corporate functions of existing municipalities until the communities had acted and organized under the autonomous powers conferred upon them would breed confusion and disastrous results. It was therefore wisely provided by section 2 of the act that existing rights and powers should obtain until the municipalities themselves elected to change them by methods prescribed, in the act, thus, for that purpose, in harmony with the spirit of home rule, leaving it optional with the municipalities. When, however, they did elect to change, and acted in compliance with the course defined by statute, their constitutional power of local legislation attached and became operative, with authority to otherwise provide by law as to present rights and powers. We think such legislative intent is plainly inferable from the general tenor of the statute, considered as a whole. A fair interpretation of its various provisions sustains such a construction.

Under these views, which are but sequential to former decisions of this court, the decree of the learned circuit judge is affirmed, with costs.

MOORE, C. J., and MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.