ATTORNEY GENERAL *v.* BOLTON.

1. JUSTICES OF THE PEACE—CONSTITUTIONAL LAW—CITIES—TIME OF ELECTING JUSTICES—DELEGATION OF POWER TO CHANGE.

Under section 21, art. 8, of the Constitution, the legislature has authority by general law to delegate to cities the power to determine the time and manner of nominating and electing justices of the peace. Per OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ.

2. SAME—DETROIT CHARTER.

Under 1 Comp. Laws 1915, § 3331, as amended by Act No. 275, Pub. Acts 1917, the city of Detroit had authority to determine, by its charter, the time and manner of nominating and electing justices of the peace, they being local officers and their selection a matter purely of local concern. Per OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ.

3. SAME—APPOINTMENT TO FILL VACANCY—"GENERAL ELECTION."

Section 27, Act No. 475, Local Acts 1903, authorizing the common council of the city of Detroit to fill a vacancy in

the office of justice of the peace "until the next general election," does not limit said term to the general election held in November of the even years, but, the office in question being a judicial one, the spring election at which justices of the Supreme Court, regents of the university, and other State officers are elected, is a "general election" for the election of judicial officers. Ostrander and Moore, JJ., dissenting.

4. Same.

Where defendant in quo warranto proceedings was, on January 7, 1919, appointed to the office of justice of the peace in the city of Detroit to fill a vacancy until the next general election, his term of office was terminated by the election of his successor at the general spring election held on April 7, 1919.

Quo warranto by Alex. J. Groesbeck, attorney general, against Edwin C. Bolton to try the title to the office of justice of the peace in the city of Detroit. Submitted June 13, 1919. (Docket No. 105.) Judgment of ouster entered July 17, 1919.

*Alex. J. Groesbeck*, Attorney General, *Leland W. Carr* and *Thomas G. Baillie*, Assistants Attorney General, for plaintiff.

*Allan P. Cox*, for defendant.

*Clarence E. Wilcox*, Corporation Counsel, and *Vincent M. Brennan*, Assistant Corporation Counsel, for the city of Detroit.

*Arthur W. Kilpatrick* and *Arthur P. Hicks*, for contestant Arthur E. Gordon.

Ostrander, J. By Act No. 475, Local Acts of 1903, entitled:

"An act to establish and provide justices' courts in the city of Detroit, and to repeal act number four hundred and twenty-six of the Local Acts of nineteen hundred and one, approved May thirteenth, nineteen hundred and one,"

—it is provided that there shall be four justices of the peace in and for the city of Detroit, who shall be elected at the regular charter election of said city or at any general election held therein, in the same manner, possess the same jurisdiction, powers, duties and liabilities, as justices of the peace for townships, excepting as otherwise provided by law. · It is provided in section 2 of this act that at the general election held in November, 1904, and every two years thereafter, there shall be elected two justices of the peace, whose terms of office shall commence on the fourth day of July next succeeding their election, and who shall hold their office for a term of four years. In section 27 of the act it is provided that in case of a vacancy in the office it shall be the duty of the common council of the city of Detroit to fill such vacancy by appointment of some suitable person, who shall upon duly qualifying therefor fill such vacancy until the next general election, when a justice of the peace shall be elected to fill the unexpired term of said officer.

By Act No. 76, Public Acts of 1917, entitled,—

"An act to authorize township boards of townships and legislative bodies of cities to fill vacancies in the office of justice of the peace,"

—it is provided that the township board of a township or the legislative body of a city may fill such vacancy—

"and such appointee shall hold office by virtue of such appointment only until the next succeeding township or city election."

This act was approved April 17, 1917, and ordered to take immediate effect.

In the information filed in this cause, the attorney general represents that a vacancy occurred in the office of a justice of the peace of the city of Detroit by resignation of the incumbent and that respondent was on January 7, 1919, appointed by the common council

to fill the vacancy, that he duly qualified on January 8, 1919, and entered upon the performance of the duties of said office; that by virtue of the said appointment respondent was empowered to perform the duties of said office until April 7, 1919, on which date his right to the office expired. It is alleged that since the last mentioned date respondent has unlawfully intruded into and usurped the said office. It is further represented in the information that the city of Detroit has a new charter in and by which it is provided (title 5, chap. 1, § 4) that at the biennial spring election in 1919, there shall be elected four justices of the peace, who shall hold their office for four years from and after the fourth day of July, 1919, at the biennial spring election in 1921 two justices of the peace shall be elected for four years from and after July 4, 1921, and thereafter there shall be elected alternately at each biennial spring election four justices of the peace and two justices of the peace who shall hold office for four years from and after the fourth day of July succeeding their election; that it is further provided in said charter that the offices of justices of the peace shall continue as heretofore created and established except that there shall be six justices of the peace as herein provided.

It is further represented that the charter of the city of Detroit provides for holding nonpartisan primary elections for nominating candidates to city offices and that on March 5, 1919, such a primary election was held in the city of Detroit, at which election it was sought to nominate a candidate for justice of the peace to fill the vacancy which by appointment respondent was filling, in which primary election respondent was a candidate and received so many votes that he became entitled to have his name appear upon the ballot as a candidate for said office; that his name duly appeared upon the ballot used in the election

held April 7, 1919, at which election he was defeated for the said office, the certificate of election being issued to another, who duly qualified; that respondent refused to abide by the result of the said election and to recognize the election of another to the office, and that in consequence the business of the court and the interests and rights of the people are hindered, embarrassed and improperly protected.

Respondent admits the appointment to the office as set out in the information. He represents that the election held in Detroit in April, 1919, was not a general election and was not a city election in that by the charter of the city the next city election will be held on the first Tuesday after the first Monday in November in the year 1921.

"Respondent further represents that an election to fill a vacancy in, or the unexpired term of, the office of justice of the peace in and for the city of Detroit and the county of Wayne, is not provided for in any way whatsoever in the charter of the city of Detroit, but on the contrary, that the charter of the city of Detroit is absolutely silent upon this subject."

Admitting that the charter of Detroit provides for a method of holding nonpartisan elections and nonpartisan primary elections, as set forth in the information, respondent contends that the office of justice of the peace in and for the city of Detroit and county of Wayne is not a municipal or city office. He says that on February 11, 1919, he presented to the city clerk of the city a partisan petition praying that his name be placed on the primary ballot of the coming primaries as a candidate on the republican ticket for the office of justice of the peace to fill the said unexpired term, and says that his said petition was refused as well as his personal petition in that behalf and his tender of the required legal fee, the said clerk declaring that there would be no partisan

ticket, but that the primary would be nonpartisan. He contends that the primary election which was had was illegal and void. He admits that at the election held April 7, 1919, he received votes and another person more votes for the said office, and that the certificate of election was issued as set out in the information, but contends that the election was void. Specifically, respondent says that the said primary election was void because contrary to the provisions of Act No. 281, Public Acts of 1909, and acts amendatory thereof, that the election held April 7, 1919, was void because contrary to the provisions of Act No. 203 of the Public Acts of 1917, contrary to section 1, article 6, of the State Constitution, and paragraph 19 of section 64 of the Compiled Laws of 1915, and that both the primary and the election were void because contrary to section 15, article 7, and section 21, article 8, of the Constitution.

To the answer the attorney general replied, saying:

"I. That respondent was on the 7th day of January, A. D. 1919, appointed to the office of justice of the peace in and for the city of Detroit by the common council of said city to fill a vacancy in said office; and that said appointment was made under and pursuant to the provisions of Act No. 475 of the Local Acts of 1903.

"II. That said common council was not authorized and empowered to make an appointment to fill said vacancy, extending beyond the next ensuing general election held in the city of Detroit, namely, the 7th day of April, 1919; that relator was not appointed to hold beyond said date; and that in fact and in law his tenure of office terminated with the holding of said election at which his successor was by law required to be chosen.

"III. That the provisions of section 28 of Act No. 279 of the Public Acts of 1909, the same being section 3331 of the Compiled Laws of 1915, as last amended by Act No. 275 of the Public Acts 1917, insofar as the same authorizes cities proceeding under said act to

provide for the time and manner of the nomination and election of justices of the peace, is a valid and constitutional enactment; and that the provisions of the charter of the city of Detroit, adopted pursuant thereto, which are in said information more fully described, are likewise valid.

"IV. That the nomination of candidates for the office of justice of the peace to fill the vacancy, and the subsequent election held and conducted on the 7th day of April, 1919, as in said information set forth, were and are valid and legal in every respect; and that in consequence the said Arthur E. Gordon was duly elected to the office of justice of the peace to fill said vacancy.

"V. That upon the election and qualification of the said Arthur E. Gordon, as in the information alleged, it became and was the duty of the respondent to immediately surrender said office and to deliver the records and effects thereunto pertaining to the said Gordon.

"VI. That in becoming and being a candidate for the nomination and election to fill said vacancy, as in the information set forth, the respondent recognized the validity of the provisions of the charter of the city of Detroit, in accordance with which the nomination and election were conducted, and consented to the form and procedure observed, which said form and procedure was in all respects as required by said charter.

"VII. That the said charter provisions, and the said provision of Act No. 279 of the Public Acts of 1909, as amended, above referred to, are not invalid, either in whole or in part for the reasons set forth in respondent's plea or for any other reasons whatsoever.

"Wherefore, the relator says that the said plea of the respondent is not sufficient in fact or in law and prays the judgment of this court that the said respondent may be ousted from the said office of justice of the peace in and for the city of Detroit."

No suggestion was made that issues be framed or that it was desired that testimony be taken. The cause therefore came on for hearing upon the pleadings.

If the act under which respondent was appointed is

alone to be considered, it is at once apparent that we must go, to find the period for which respondent was appointed, to section 27 of Act No. 475 of the Local Acts of 1903. Having been appointed pursuant to this law, respondent's right to the office expired, in terms of the law, at the next general election. The term general election means, as here used, the general election held in November in the even years. It cannot be doubted that the reference to a general election in section 27 is to the general election also mentioned in section 2 of the act.

But it is asserted by the attorney general that respondent's right to the office terminated at the time when by election the vacancy could be filled and that this time is fixed by the revised charter of the city as the biennial spring election in 1919. In other words, we are to consider the question as though section 27 of Act No. 475 of the Local Acts of 1903 was amended by the revised charter of the city of Detroit so as to fix the period of the appointment as expiring at the date fixed in the charter for the election of justices of the peace. We are agreed that respondent's tenure of office was limited by the day of the election at which the vacancy in the office was required to be filled, and, being so agreed, address ourselves to the principal question debated, which is whether the city had power to provide in its charter for an election of justices of the peace at a different time than the one named in the local act.

Justices of the peace are constitutional officers in whom, by the Constitution, is vested a part of the judicial power of the State. After providing that not to exceed four justices shall be elected in each organized township of the State, the Constitution (art. 7, § 15) says, "The legislature may provide by law for justices in cities." The Constitution further provides, article 8, § 20, that the legislature shall provide by a general

law for the incorporation of cities and, section 21, under such general law the electors of each city shall have power and authority to frame, adopt and amend its charter and to amend an existing charter of the city heretofore granted and passed by the legislature for the government of the city and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of the State. The legislature has provided by a general law for the incorporation of cities, and in that general law has made especial reference to justices of the peace. The section, 1 Comp. Laws 1915, § 3331, as amended by Act No. 275, Pub. Acts 1917, is here set out:

"In all cities now organized, which may hereafter amend or revise their charters under the provisions of this act, all of the provisions of the present law, whether general or special, applying to any such city relating to the qualifications, term of office, powers, jurisdiction, duties and compensation of justices of the peace and constables therein, and the conduct of all proceedings, suits and prosecutions before such justices of the peace and appeals therefrom, and all laws creating municipal courts and the proceedings thereof in any such city, shall remain in full force and effect, except as to the time and manner of nomination and elections of judges, justices and court officers: *Provided,* That any city may in its charter provide for and limit to one or more the number of justices of the peace and may provide that the civil jurisdiction of such justice or justices shall be increased to five hundred dollars with such exceptions and restrictions as are provided by law; and may also in its charter, or by ordinance, provide that any justice of the peace shall be paid a salary, in lieu of fees, the amount of said salary to be fixed by said charter or ordinance, in which case all fees chargeable by such justice of the peace shall be collected by him and shall be forthwith paid into the city treasury: *Provided, further,* That any justice of the peace or municipal judge provided for by municipal charter in accordance

with the provisions hereof shall have the same jurisdiction as is or may be conferred by law on justices of the peace in townships in both civil and criminal matters."

In view of the purpose and language of the Constitution, we regard the words employed in this section of the general law as meaning that cities may determine the time and manner of nominating and electing justices of the peace. If such authority may be delegated by the legislature to cities, we regard this as a sufficient delegation of authority. .

Assuming that justices of the peace are an integral part of the judicial system of the State, they are nevertheless local officers and their selection is matter purely of local concern. No one excepting those directly charged with their nomination and election have any possible interest in the subject of when or how their selection shall be brought about. We find sanction for the delegation to the city of the power to fix the time of their selection in the provisions of section 21, article 8, of the Constitution.

It follows that judgment of ouster must be entered.

MOORE, J., concurred with OSTRANDER, J.

BROOKE, J. I concur with Justice OSTRANDER upon the main question involved, but agree with Justice FELLOWS that the spring election of 1919 was a general election.

STEERE, STONE, and KUHN, JJ., concurred with BROOKE, J.

FELLOWS, J. I am not persuaded that the term "general election" found in section 27 of Act No. 475, Local Acts 1903, has reference solely to the general election mentioned in section 2 of the act. Section 2 by its express language provides for the election of justices of the peace:

"At the *general election held in November,* in the year nineteen hundred and four, and every two years hereafter."

Section 27 authorizes the common council to fill a vacancy in the office of the justice of the peace, "until the next general election," and does not limit the term "general election" to the general election *held in November* of the even years as does section 2. The office in question is a judicial one, and I am impressed that the election held April 7, 1919, at which Justices of the Supreme Court, regents of the university and other State officers were elected was a "general election" for the election of judicial officers. *People* v. *Burch,* 84 Mich. 408, 417. Respondent's appointive term, in my judgment, expired on this date. For this reason I concur in the judgment of ouster.

BIRD, C. J., concurred with FELLOWS, J.