PEOPLE, *ex rel.* WEXFORD COUNTY
PROSECUTING ATTORNEY, *v.* KEARNEY.

1. CONSTITUTIONAL LAW—POLITICAL POWER.
   All political power is inherent in the people.

2. SAME—JUDICIAL POWER.
   The judiciary is an independent department of the State government and derives none of its judicial power from either of the
   other departments.

3. SAME—LEGISLATURE—OFFICERS—QUALIFICATIONS.
   While the legislature can neither increase nor diminish the qualifications which the Constitution has prescribed for eligibility
   to any office created by the Constitution, the legislature may
   authorize or establish such qualifications as in its judgment will
   best accord with public policy or subserve the interests of
   those affected by offices which the legislature may authorize
   or establish either by virtue of express authority in the Constitution itself, or by virtue of its general legislative authority.

4. COURTS—MUNICIPAL COURTS—LEGISLATURE.
   Municipal courts are not created by the Constitution but only
   authorized and permitted, and derive all their powers from
   the legislature (Const 1908, art 7, § 1).

5. JUDGES—MUNICIPAL COURTS—ATTORNEYS.
   It was within the power of the legislature to provide that the
   judge of a municipal court, an office which the Constitution
   specifically authorized the legislature to create, be an attor

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 11 Am Jur, Constitutional Law §§ 8, 12.
[2] 11 Am Jur, Constitutional Law § 201.
[3] 11 Am Jur, Constitutional Law § 191 *et seq.*
[4] 14 Am Jur, Courts § 17.
[5] 30 Am Jur; Judges § 10.
[6] 37 Am Jur, Municipal Corporations § 83.
[7] 44 Am Jur, Quo Warranto § 22 *et seq.*

ney licensed to practice law (Const 1908, art 7, § 1; Local Acts 1895, No 429).

6. SAME—QUALIFICATIONS—STATUTES—HOME-RULE CITIES.

The home-rule act gave cities the right to determine the time and manner of nominating and electing judges to the municipal courts but did not give them the right to establish qualifications contrary to those established by the legislature (Const 1908, art 7, § 1; CL 1948, § 117.28; Local Acts 1895, No 429; Cadillac Charter 1913, ch 20, § 1, as amended in 1933).

7. QUO WARRANTO—MUNICIPAL JUDGES—LICENSED ATTORNEYS.

Quo warranto proceedings were properly instituted by the prosecuting attorney of the county in which municipal court was located to test the right of defendant incumbent, not an attorney licensed to practice law, to preside as judge after his election for term beginning in 1954, notwithstanding home-rule city had adopted a charter amendment over 20 years theretofore which omitted requirement that he be an attorney and local act theretofore establishing the court and containing such requirement was still effective (Const 1908, art 7, § 1; CL 1948, §§ 117.28, 638.1, 638.26–638.29; Local Acts 1895, No 429; Cadillac Charter 1913, ch 20, § 1, as amended in 1933).

SMITH and BLACK, JJ., dissenting.

Appeal from Wexford; Campbell (Howard L.), J. Submitted January 3, 1956. (Docket No. 6, Calendar No. 46,626.) Decided May 14, 1956. Rehearing denied June 28, 1956.

Quo warranto by the People of the State of Michigan, *ex rel.* Wexford County Prosecuting Attorney, against B. G. Kearney to test latter's right to office as judge of Recorder's Court for the City of Cadillac. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *William R. Peterson,* Prosecuting Attorney, Wexford County, for plaintiff.

*Charles H. Menmuir* and *Stuart D. Hubbel,* for defendant.

Kelly, J. Defendant was elected judge of the recorder's court for the city of Cadillac for a 4-year term, commencing January 1, 1954. An information in the nature of quo warranto was filed, challenging defendant's right to hold the office because he was not a qualified attorney authorized and licensed to practice law in the State of Michigan, as required by Local Acts 1895, No 429.

The main question presented in this appeal is whether the trial court erred in finding and entering judgment that:

"The legislature could not, by Local Acts 1895, No 429, lawfully attach qualifications to the office of judge of recorder's court when no such qualifications for judicial office were required by the State Constitution of 1850 and that to attempt to do so would be an encroachment by the legislature upon the powers and functions of the judiciary."

The State Constitution of 1850, art 6, § 1, provided:

"The judicial power is vested in one Supreme Court, in circuit courts in probate courts, and in justices of the peace. Municipal courts of civil and criminal jurisdiction may be estabished by the legislature in cities."

Appellee states:

"We believe this case is governed by the case of *Attorney General, ex rel. Cook*, v. *O'Neill*, 280 Mich 649. * * *

"The *O'Neill Case* set the pattern, we believe, that the judicial department of the government, or any of its branches or courts cannot be dictated to by the legislature; that the judicial department is a separate department of government under the doctrine of separation of powers. * * * Therefore, it seems inescapable that the *O'Neill Case* controls the case at bar in its pronouncement that the legisla-

ture cannot set up the qualification that one must be a lawyer to hold judicial office (unless and until the constitutional framework is amended to so provide).”

In this regard it is worthy of note that at the biennial spring election of April 4, 1955, an amendment to the Constitution was adopted providing that:

“Justices of the Supreme Court and judges of all circuit courts in this State elected or appointed after July 1, 1955, shall at the time of such election or appointment be under 70 years of age and licensed to practice law in this State.”

Appellant comments upon *Attorney General, ex rel. Cook,* v. *O’Neill,* 280 Mich 649, as follows:

“Is the instant case governed by *Attorney General, ex rel. Cook,* v. *O’Neill,* 280 Mich 649? The trial court so held, but it is submitted that the trial court failed to observe the distinction between constitutional offices and legislative offices. The *O’Neill Case* is obviously distinguishable in that it involved a constitutional office. It is precedent only as to constitutional courts; *viz.,* Supreme, circuit, probate and justice courts. This case does not involve a constitutional court but rather a legislative court, created by the legislature pursuant to an explicit constitutional mandate as above set forth.”

The controlling facts in the *O’Neill Case, supra,* were not in dispute. On November 3, 1936, James E. O’Neill was elected circuit judge of the tenth judicial circuit. Mr. O’Neill was admitted to the bar of Michigan August 7, 1928, on motion in the circuit court for the county of Saginaw, but did not file with the clerk of the Supreme Court his affidavit showing his name, residence, citizenship, and the court by which he was admitted to practice in this

State, as required by CL 1929, § 13578,* until March 10, 1932.

In the *O'Neill* opinion, this Court commented on constitutional provisions, and stated (pp 653, 654):

"The theory of our government, both Federal and State, is one of separation of powers. * * * 'Under our Constitution "all political power is inherent in the people." ' "

On this point the Court quoted (p 654) from 6 RCL, Constitutional Law, § 157, pp 157, 158, as follows:

" 'The judiciary is an independent department of the State government, deriving none of its judicial power from either of the other departments. * * * In a general way, the courts possess the entire body of judicial power. The other departments cannot properly assume to exercise any part of this power; it cannot be taken away by a legislative action, nor is the legislature permitted to interfere with the courts in the performance of their duties.' "

In the *O'Neill Case, supra,* the Court also said (pp 656, 658):

"In *People, ex rel. Hughes,* v. *May,* 3 Mich 598, 610, we find this statement:

" 'We concede, to the fullest extent, that it is not in the power of the judiciary, or even the legislature, to establish arbitrary exclusions from office, or annex qualifications thereto, when the Constitution has not established such exclusions nor annexed such qualifications.'

"While the statement above quoted was *dicta* at the time of its writing, yet it represents our views on the question involved in the instant case. * * *

"The conclusion is inevitable that under the division of powers in the Michigan Constitution the ju-

---

* This section, with amendment of PA 1937, No 43, relative to practice of law following admission, is now CL 1948, § 601.52 (Stat Ann 1955 Cum Supp § 27.72).—REPORTER.

diciary is an independent department of the State government and the legislature has no power to annex qualifications for circuit judges not found in the Constitution."

In the concurring opinion in the *O'Neill Case, supra,* written by Justice POTTER, the following from Mechem, Public Offices and Officers (1st ed), § 65, p 22, was set forth:

" 'It is entirely competent for the people, in framing their governments, to declare what shall be the qualifications which shall entitle one to hold and exercise a public office, and in many of the Constitutions this has been done with more or less certainty and precision. Constitutional provisions, which are exclusive in their nature, are, of course, supreme, and it is not within the power of legislatures to supersede, evade or alter them.' "

Justice POTTER also quoted (p 664) from a case which we believe is important in considering the present case, namely, *Sheehan* v. *Scott,* 145 Cal 684, 687 (79 P 350), wherein it was said:

"It is not contended by the appellant that the Constitution contains any express inhibition upon the legislature against prescribing qualifications for the officers whose appointment or election it may authorize, but he contends that the designation in the Constitution of the qualifications of certain officers named therein creates an implication that in all other cases no other qualification shall be required than those of an elector. It may be admitted that the legislature can neither increase nor diminsh the qualifications which the Constitution has prescribed for eligibility to any of the offices created by that instrument; but for all offices which the legislature may authorize or establish, either by virtue of express authority therefor in the Constitution itself, or by virtue of its general legislative authority, it may prescribe such qualifications as in its judgment will best

accord with public policy or subserve the interests of those affected thereby."

Another case set forth in the concurring opinion which must be considered in determining the intent of the *O'Neill* decision by this Court, was *People, ex rel. Hoyne,* v. *McCormick,* 261 Ill 413, 421 (103 NE 1053, Ann Cas 1915A, 338), from which Justice POTTER quoted (p 666) as follows:

" 'There is a distinction between offices created by the constitution and those created by statute. Where an office is created by statute it is wholly within the power of the legislature creating it. The length of term and mode of appointment may be altered at pleasure and the office may be abolished altogether.' "

The *O'Neill Case, supra,* 658, decided that "the legislature has no power to annex qualifications for circuit judges not found in the Constitution." That decision, however, did not deal with the problem presented in this appeal, namely: The legislative right to establish qualifications that one must be a lawyer to hold the judicial office, judge of the recorder's court for the city of Cadillac.

An interesting comment in regard to judicial power and the constitutional grant to the legislature to limit the powers and duties of the probate courts and the justice courts, but not the circuit courts, is found in *Nichols* v. *Judge of Superior Court of Grand Rapids,* 130 Mich 187, 193, 194, as follows:

"The Constitution of 1835 provided that 'the judicial power shall be vested in one Supreme Court, and in such other courts as the legislature may from time to time establish.' Const 1835, art 6, § 1. The people were dissatisfied with the courts organized by the legislature, and, in the adoption of the new Constitution, made an important change by providing that:

" 'The judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace. Municipal courts of civil and criminal jurisdiction may be established by the legislature in cities.' Const 1850, art 6, § 1.

"Thus the unlimited power to create courts, given by the Constitution of 1835, was taken away by the new Constitution, and the legislature was limited to the creation of 'municipal courts of civil and criminal jurisdiction.' The reason for this important change in the organization of the courts is stated in *Streeter* v. *Paton,* 7 Mich 341.

"By sections 13 and 18 of article 6, the jurisdiction, powers, and duties of the probate and justices' courts may be limited and prescribed by the legislature. No such power is found as to the circuit courts or the Supreme Court."

By mandatory language the Constitution (1908) requires the establishment of circuit courts.* See *Kates* v. *Reading,* 254 Mich 158. The municipal courts are not created by the Constitution, but only authorized and permitted,† and said courts derive all their powers from the legislature. See *Dunham* v. *Tilma,* 191 Mich 688.

Appellant calls to this Court's attention "that this State has a long history of legislatively created offices, including judgeships, in which qualifications have been established by the legislature without question." This statement is sustained when we consider the following acts: PA 1879, No 76 (CL 1948, § 729.1 *et seq.* [Stat Ann § 27.3711 *et seq.*] ), creating a police court for the city of Grand Rapids; PA 1911, No 299 (CL 1948 and CLS 1954, § 730.1 *et seq.* [Stat Ann and Stat Ann 1955 Cum Supp § 27.3751 *et seq.*] ), regarding justices of the peace in cities of 80,000 population; PA 1913, No 353 (CL 1948, § 729.101 *et seq.* [Stat Ann § 27.3741 *et seq.*]),

---

\* Const (1908), art 7, §§ 1, 8 *et seq.*—REPORTER.
† Const (1908), art 7, § 1.—REPORTER.

regarding police courts in cities from 125,000 to 200,-
000 population; PA 1933, No 269 (CL 1948 and CLS
1954, § 730.101 *et seq.*, as amended by PA 1955, No 75
[Stat Ann and Stat Ann 1955 Cum Supp § 27.3831 *et
seq.*]), originally as to municipal courts in cities from
100,000 to 160,000 population; and PA 1929, No 260
(CL 1948 and CLS 1954, § 728.1 *et seq.*, as amended
by PA 1955, Nos 105, 169 [Stat Ann and Stat Ann
1955 Cum Supp § 27.3651 *et seq.*]), as to common
pleas courts in cities having a population of over
250,000.

We reiterate as controlling in this decision the
principles of law set forth in the California case of
*Sheehan* v. *Scott, supra,* 687, that:

"It may be admitted that the legislature can nei-
ther increase nor diminish the qualifications which
the constitution has prescribed for eligibility to any
of the offices created by that instrument; but for all
offices which the legislature may authorize or estab-
lish, either by virtue of express authority therefor
in the constitution itself, or by virtue of its general
legislative authority, it may prescribe such qualifica-
tions as in its judgment will best accord with public
policy or subserve the interests of those affected
thereby."

The trial court erred in finding that the legislature
could not by Local Acts 1895, No 429, constitutionally
and legally attach the qualification above discussed.

The trial court and appellee contend that the
home-rule act (PA 1909, No 279 [CL 1948, § 117.1
*et seq.* (Stat Ann 1949 Rev § 5.2071 *et seq.*) ] gave
the electors of the city of Cadillac the right to amend
the charter and delete the qualifications in question
as to the office of municipal judge.*

The home-rule charter of the city of Cadillac,
adopted by the electors December 9, 1913, followed

---

* See CL 1948, § 117.28 (Stat Ann 1949 Rev § 5.2107). The
amendment, PA 1954, No 75, does not bear upon the question here.—
Reporter.

the legislative charter of 1895 and contained a provision (chap 20, §1) requiring the recorder's court judge to be an admitted, practicing attorney of the city. This section was amended on April 3, 1933, by a 3-to-1 vote of the electors, deleting the requirement that the recorder's court judge be an admitted, practicing attorney, and providing that:

"Such court shall be entitled 'the recorder's court of the city of Cadillac,' and shall have such general powers, and such powers and jurisdiction in civil and criminal matters, as are by the laws of the State of Michigan conferred upon justices of the peace of townships."

The amendment adopted April 3, 1933, was not challenged for over 21 years, and both attorney and layman have served in the office of recorder's court judge since 1933.

In *Gallup* v. *City of Saginaw*, 170 Mich 195, 199, 200, this Court said:

"The framers of the Constitution, in departing from the old order of things and providing for what is popularly known as 'home rule' or 'freeholder's charters,' thereby granting autonomy to municipalities, did not deem it wise to make the constitutional provision on the subject self-executing, but required a preliminary, general law to be passed, outlining and defining the course to be followed, within certain limits, delineating the sphere of municipal action in comprehensive terms. The new system is one of general grant of rights and powers, subject only to certain enumerated restrictions, instead of the former method of only granting enumerated rights and powers definitely specified. We must assume the act was passed with that intent and construe it accordingly."

This Court held in *Bostedor* v. *City of Eaton Rapids*, 273 Mich 426, that the provisions of the home-

rule act could not be abrogated by charter provisions.

The restrictions against electors' right of amending the charter in regard to municipal courts and the legislative insistence that the laws creating municipal courts should remain in force and effect, is set forth in section 28 of the home-rule act, which provides:

"In all cities now organized, which may hereafter amend or revise their charters under the provisions of this act, all of the provisions of the present law, whether general or special, applying to any such city relating to the qualifications, term of office, powers, jurisdiction, duties and compensation of justices of the peace and constables therein, and the conduct of all proceedings, suits and prosecutions before such justices of the peace and appeals therefrom, and all laws creating municipal courts and the proceedings thereof in any such city, shall remain in full force and effect, except as to the time and manner of nomination and elections of judges, justices and court officers." (CL 1948, §117.28 [Stat Ann 1949 Rev §5.2107].)

The above provision of section 28 was referred to in *Attorney General* v. *Bolton,* 206 Mich 403, 411, 412, wherein this Court stated:

"In view of the purpose and language of the Constitution, we regard the words employed in this section of the general law as meaning that cities may determine the time and manner of nominating and electing justices of the peace."

Section 28 of the home-rule act did give to the cities the right to determine the time and manner of nominating and electing judges, but it did not give to the cities the right to establish qualifications contra to the qualifications established by the legislature.

The provision of Local Acts 1895, No 429, requiring the judge of the recorder's court of Cadillac to be a qualified attorney was not deleted by the electorate's amendment to the city charter on April 3, 1933.

This proceeding was brought by the prosecuting attorney of Wexford county in the circuit court of Wexford county, under PA 1915, No 314, ch 38, § 1 (CL 1948, § 638.1 [Stat Ann § 27.2315] ), which provides:

"Any information in the nature of a quo warranto may be filed in the Spreme Court, either in term time or vacation, by the attorney general, against individuals, upon his own relation, or upon the relation of any private party, and without applying to such court for leave, in either of the following cases;

"1. When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this State; or any office in any corporation created by the authority of this State."

Sections 26 and 27 of chapter 38 of the judicature act, permitting such proceedings in the circuit court, provide:

"Sec. 26.   An information in the nature of a quo warranto may be filed in the several circuit courts of this State, as well as in the Supreme Court, and all of the provisions of this chapter shall be applicable to such proceedings in such circuit courts, and all powers conferred upon the several judges of the Supreme Court by this chapter are hereby conferred upon the judges of the several circuit courts respectively:   Provided, That no such information shall be filed and allowed by any such circuit court against any judge of the Supreme Court or any State officer." (CL 1948, § 638.26 [Stat Ann § 27.2340]. )

"Sec. 27.   Informations under this chapter may be filed by the prosecuting attorney of the proper county, on his own relation, or that of any citizen of the

county, without leave of the court, or, by any citizen of the county by special leave of the court or a judge thereof." CL 1948, § 638.27 [Stat Ann § 27.2341].)

We do not agree with the trial court that this action could only be brought by proceedings against the city of Cadillac within 30 days after the charter amendment adopted in 1933. The court's contention in this regard would have been correct if the proceedings involved "material fraud or error * * * committed at any election in such county," as provided by CL 1948, §§ 638.28, 638.29 (Stat Ann §§ 27.2342, 27.2343).

Reversed and remanded with instructions to enter judgment in accordance with this opinion.

DETHMERS, C. J., and SHARPE, BOYLES, and CARR, JJ., concurred with KELLY, J.

BLACK, J. (*dissenting*). The first and I think decisive question is whether we are compelled by law (CL 1948, § 117.28 [Stat Ann 1949 Rev § 5.2107] ) to overrule the twice-recorded will of the electorate of Cadillac, that laymen as well as attorneys be and remain eligible under the city charter to the office of judge of the municipal court of Cadillac. I find no such compulsion.

By Cadillac's legislative charter (Local Acts 1895, No 429) it was provided:

"There shall be and hereby is established a recorder's court in said city, and on the first Monday of April, 1896, and every 6 years thereafter, there shall be elected a judge of the recorder's court in said city, *who shall be an admitted practicing attorney of said city.*"

The so-called home-rule act having been enacted in 1909 (PA 1909, No 279 [CL 1948, § 117.1 *et seq.* (Stat Ann 1949 Rev § 5.2071 *et seq.*) ] ), and art 8, § 21

Const (1908) having been amended in 1912 to read as follows:

"Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, and to amend an existing charter of the city or village heretofore granted or passed by the legislature for the government of the city or village and, through its regularly constituted authority, to pass all laws and ordinances relating to its municipal concerns, subject to the Constitution and general laws of this State.",

the electors of Cadillac proceeded December 9, 1913 to adopt a comprehensive "home-rule" charter. The 1913 charter incorporated without substantial change the above-quoted portion of the mentioned legislative charter. Thus and by authority of constitutional "home rule" Cadillac initially adopted the 1895 requirement that her recorder's court judge be an attorney.

April 3, 1933, the electors of Cadillac, by 3-to-1 vote, proceeded to amend section 1 of chapter 20 of the 1913 charter so that same read as follows:

"There shall be, and hereby is, established a recorder's court of the city of Cadillac, and at the first municipal election held under this charter and every 4 years thereafter, there shall be elected a recorder in said city, *who shall be a resident qualified elector of said city.*"

The 1912 amendment quoted above, considered with the home-rule act as amended, gave to Cadillac the clearly-worded right to amend her then charter, which charter as we have seen was "granted or passed by the legislature for the government of the city," "subject to the Constitution and general laws of this State." This leaves bare the question whether the statute (PA 1927, No 32), which Mr. Justice KELLY relies upon, operated in 1933 to nullify the

charter-amending vote of Cadillac's electors as registered at the time. The statute then read and still reads (CL 1948, § 117.28 [Stat Ann 1949 Rev § 5.-2107]), so far as concerns this case:

"All laws *creating* municipal courts and the proceedings thereof in any such city, shall remain in full force and effect."

By the 1933 charter amendment the people of Cadillac did not repeal or destroy the law which *created* their municipal court and proceedings therein. To the contrary, they expressly retained it. They did, as was their home-rule due, ordain eligibility of laymen as well as attorneys for the office of judge of their recorder's (municipal) court. So long as Cadillac effectively retained the law creating its court—and for 23 years it seems to have successfully done so with and without attorneys presiding as judge thereof—its people were not then and are not now guilty of infringement of a general law of this State the purpose of which was simply that of preservation of continued functioning of the justice and municipal courts identified therein.

To preserve law *creating* a court and its proceedings is one thing. To preserve law limiting eligibility of candidates for judge thereof is another. The statute did not say, and does not today say, that laws stipulating qualifications of judges of courts, municipal or otherwise, shall remain in effect. All that is preserved inviolate is law creating the court and its proceedings.

The 1895 act distinct from the qualification now being considered fully created the court and its proceedings. The act of creation did not require, and it would have been completely effective without, the provision that the judge be an attorney. The disagreement we are experiencing is, in my view, due to the *position,* in the act of 1895, of such provision.

If the provision had been incorporated in a section separate from section 1 of title 6 of the act, or if it had been included in a separate title of the act, or if it had been ordained by later local act, it is altogether unlikely that this quo warranto proceeding would have been instituted.

We are interpreting a general law designed solely toward continuity of laws creating municipal courts and their proceedings. All else so far as this case is concerned is left to local will. Let us suppose the act of 1895 provided that the recorder be of a certain and now outmoded minimal age, or that his annual salary be a certain amount deemed, by the electors who usually dig the money for payment thereof, too high or too low for this modern day. Suppose again that the act dictated provision for quartering of the court in a place and under conditions that are no longer available in Cadillac. Would such be law of creation of the court? These questions answer themselves in light of the mentioned general statute. That statute limits its restriction upon local control to preservation of continued life and integrity of the court and its proceedings. Since the legislature has put no more than that in words, it is our duty under the rule *exclusio* to presume legislative intent of exclusion, from purview of the statute, of any law or part of law not necessary to the creation of municipal courts and proceedings thereof.

Mr. Justice KELLY points out, in his opinion, that the people of Michigan April 4, 1955, amended their Constitution to provide that justices of the Supreme Court and judges of all circuit courts elected or appointed prospectively be less than 70 years of age and that they be "licensed to practice law in this State." Such is the recorded (and I will add salutary) will of Michigan as applied only to her Supreme and circuit courts. The will of the people

of Cadillac, as to their own court, is likewise just as plainly of record. Cadillac did not wish in 1933— or in 1954, as registered by overwhelming majority vote, to continue or to re-enact the 1895 restriction against elective-appointive eligibility of a layman to be their municipal judge. With that decision, essentially one of home rule affecting Cadillac only, we have no right to interfere.

If in the future no licensed attorney of Cadillac will run for recorder—and such things have been known to occur considering munificence of salary*— must Cadillac go without her chartered court unless and until the legislature relents and relieves the city from legislation of white-pine days? My Brothers apparently answer in the affirmative.

If the majority decision be right, it is passing strange that the question of the day did not reach even the Wexford county circuit court until more than 2 decades had elapsed following the allegedly illegal charter amendment of 1933. A good many judgments, and a good many fines and jail sentences, have been entered and pronounced judicially in this recorder's court during the past 23 years by a succession of now disqualified laymen. The rule respecting *de facto* officership may protect such judgments and sentences from collateral attack but that is no shield so far as Mr. Kearney is personally concerned. He has administered the office of recorder's judge of Cadillac continuously since 1948—right well according to this record—and no questions asked until recently. Yet, by today's majority rul-

---

* The recorder's salary is fixed by the present charter at $600 per annum. The local act of 1895 provided that the recorder's salary shall be such "as the council shall prescribe." If our majority is to freeze the act of 1895 into Cadillac's judicial process, it seems to me that we should, at the same time, forthrightly advise the city's prospective candidates for recorder that the salary-fixing authority of city fathers is included. The will of the people having been so recently and resoundingly voiced, the prospect may not be too inviting for lay as well as professional candidates for recorder.

ing, we place him *nunc pro tunc* in an unpredictable position. May he retain, for instance, the salary he has earned and received this past 7 years?

It is freely admitted that the considerations just expressed must be cast aside if by clear force of properly interpreted law we have no alternative other than that of ouster of Mr. Kearney as municipal judge of Cadillac. I nevertheless point to them as special reason for due care to avoid what may otherwise be cavalier reversal of the elective and judicial decisions that are forcefully shown in this record.

Withal, this Court had better be right in its palæstric effort to strain, from section 28 of the home-rule act (CL 1948, §117.28 [Stat Ann 1949 Rev § 5.2107]), an inference that the legislature has permanently clamped on Cadillac this 1895 requirement of administration by an attorney of the limited jurisdiction of her recorder's court. The intervening rule of construction that applies here— that of liberality in "the home-rule spirit" of 1908— seems to be at variance with such effort (*Conroy v. City of Battle Creek,* 314 Mich 210, 221).

I would affirm, without costs.

Smith, J., concurred with Black, J.

The late Justice Reid took no part in the decision of this case.