Christian, J.
At the November term of the circuit court of [Fairfax county in the year 1866 Anderson recovered a judgment by default against Batcliffe upon a bond executed by said Batcliffe, and payable on demand, and bearing date the 6th day of June, 1863, for the sum of $300.
*106 On the 4th clay of February, 1874, more than seven years after the judgment was rendered, Eatclifi'e filed petition in said circuit court asking the court to reopen said judgment and scale the amount of the according to the depreciation of Confederate money, he alleging in his petition that the bond upon which the judgment was rendered was given for Confederate currency.
This petition of the appellant was filed under the act of the general assembly, approved March 25th, 1873, amending the act passed March 3d, 1866, which is in the following words :
1. Be it enacted by the general assembly, That the third section of the act passed March 3, 1866, in relation to contracts made between January 1, 1862, and April 10, 1865, be amended and re-enacted so as to read as follows:
§ 3. Where any judgment or decree has been recovered for a specific sum, or for damages, between the said 1st day of January, 1862, and the said 10th day of April, 1865, or shall have been recovered after the said 10th day of April, 1865, and before the 3d day of March, 1870, or if any judgment or decree.shall have been rendered or recovered by default since the said 3d day of March, 1866, or shall hereafter be rendered or recovered by default upon a cause of action arising within the period from the 1st day of January, 1862, to the 10th day of April, 1865, and such judgment or decree remain unpaid, it shall be lawful for the courts, in a summary way, on motion, after ten days’ notice, either before or after the issue of execution, to fix, settle and direct at what depreciation, or how, the said judgment or decree shall be discharged, having regard to the provisions of this act, to the cause of action for which the judgment or decree was recov *107 ered, and any other proof or circumstance that, from the nature of the case, may he admissible.
It is under this provision of the act of March, 1873, that it is proposed to reopen and annul in whole or in part a judgment rendered by a court of competent jurisdiction in favor of the appellee in [November, 1866. I am of opinion that this cannot be done, and that the act of assembly above quoted is not only an attempted invasion of judicial authority, but is in contravention of that provision of the constitution of the United States and of this state which declares that the state shall pass no law “ impairing the obligation of a contract.”
Hirst, the act is an attempted exercise of judicial power because it authorizes a court to reopen and review a case which has already passed into judgment. It is now too well settled to admit of serious dispute that the legislative department can no more exercise1 judicial power than that the judicial department can exercise legislative power. Each is supreme in the exercise of its own proper functions within the limits of its authority. The boundary line of these powers is plainly defined in every well-ordered government; and in this country it is noiv a well-established principle of public law that the three great powers of government—the legislative, the executive, and the judicial—should be preserved as distinct from and independent of each other as the nature of society and the imperfections of human institutions will permit. That system which best preserves the independence of each department approaches nearest to the perfection of civil government and the security of civil liberty.
The province of the courts is to decide what the law is or has been, and to determine its application to particular facts in the decision of causes. The prov *108 ince of the legislature is to declare what the law shall be in future; and neither of these departments can invade the province of the other. This not only results from the nature of our institutions, but it enjoined by the express provisions of the constitution ; which declares that “ the legislative, executive, and judiciary departments shall be separate and distinct, so that neither exercise the powers belonging to either of the others. See Griffin’s ex’or v. Cunningham, 20 Gratt. 31, and cases there cited.
I do not deny the power of the legislature to pass statutes in aid of judicial proceedings and which tend to their support by precluding parties from taking advantage of errors apparent on the face of the proceedings which do not affect their substantial rights— such a statute, for instance, as is found in our Code, ch. 177, § 3, which permits a court in which a judgment has been rendered, on notice and motion within five years, to correct any mistake, miscalculation, or misrecital of any name, sum, quantity, or time, when the same is right, in any part of the record or proceedings, &c.
Such, also, is the statute which authorizes a court, or judge in vacation, to reverse a judgment by default, or a decree on a bill taken for confessed, for any error for which an appellate court might reverse it.
Statutes such as these are not regarded as an interference with judicial authority, but only in aid of judicial proceedings for the purpose of correcting errors, such as are mentioned in the statute. See Cooley’s Const. Limit., p. 107; Griffin & Cunningham, supra, and cases there cited.
Now, it is to be observed in respect to the judgment under consideration, that it was recovered in a suit brought after the passage of the act of March 3,1866, to-wit: at the November term, 1866, of the circuit *109 court of .Fairfax. Under the act referred to it would then have been competent for Batclift'e to show that the contract between him and Anderson was “ ing to the true understanding and agreement of the parties, to he fulfilled or performed in Confederate States treasury notes, or was entered into with reference to such notes as a standard of value ” ; and upon such evidence the court then had authority to reduce the debt.from its nominal amount according to the scale of depreciation. But no such defence was then made, and no evidence supporting such defence was ottered; and a judgment was properly rendered for the whole amount of the bond. That judgment, not appealed from, was final, and adjudicated the rights of the parties forever, unless the judgment can be reopened under the act of March 25, 1873. The proceeding under which it is now attempted to reopen this judgment was not had under the act of March, 1866, nor could it be; and it is not so claimed on the petition for a writ of error. The third section of that act plainly refers to judgments rendered before its passage, and not to judgments thereafter recovered. The language of that act plainly shows this; and the fact that the act of 1873 was passed for the purpose of extending the provisions of the act of 1866 plainly indicates that this was the legislative construction given to that act. The petition for a writ of error concedes this by admitting that the proceedings in this case were had under and by virtue of the act of March 25th, 1873. It is to the construction and constitutionality of that act, and not the act of March 3d, 1866, that my opinion is confined. The single question, therefore, we have to determine is whether this last-named act is constitutional. My opinion clearly is that upon the principles already adverted to, and for other reasons to he assigned, that said act so far as it authorizes *110 the reopening of a judgment rendered after March 3d, 1866, is in contravention of the constitution, and void.
"When the act under which the claim in this case asserted was passed, the defendant in error (Anderson) had recovered a judgment against Ratcliffe. That judgment was a final adjudication of the rights of the parties, and had so stood for nearly seven years before the passage of the act. The rights of Anderson and those claiming under him had become fixed and vested; and any attempt on the part of the legislature to impair these vested rights was an invasion' of judicial authority, and must be treated as unconstitutional and void.
As was well said by Chief Justice Mellen in Lewis et al. v. Webb, 3 Greenl. R. 326, 332, whose language, with slight modifications, we may adopt in this case: “ Can the legislature, by a mere resolve, set aside a judgment or decree of a judicial court and render it null and void, or authorize- such court to reopen a judgment already final and annul the same in whole or in part ? This is an exercise of power common in courts of law a priori, -not questioned in a proper case, but it is one purely judicial in its nature and consequences.” Such an act “professes to grant to one party in a cause which has been, according to existing laws, finally decided, special authority to compel the other party, contrary to the general law of the land, to submit his cause to another court for trial; the consequence of which may be the total (or partial) loss of all those rights, or all that property which the judgment complained of had entitled him, and those claiming under him, to hold and enjoy; that is, it accomplishes that which the existing law forbids, and which by direct and legal course cannot be attained. * * It is the province of the legislature to make and estab *111 lish laws; it is the province and duty of judges to expound and apply them.”
In the case before us the legislature interfered to provide a new remedy for the benefit of a class of persons to obtain a rehearing in suits in which judgments and decrees had been made, and became final against them. At the time the act under review was passed the money adjudged to be paid to the defendant in error was his property in a legal sense, and of this he could not be deprived, and his vested right therein could not be impaired by subsequent legislation. See 30 Barb., 10 New York 396; 15 Id. 600; 11 Paige 400; 2 Allen 361; 27 Barb. 154; 7 Johns. R. 490. In the last-named case Spencer, J., said: “It is not necessary to inquire whether a legislature can, by the plenitude of its power, annul an existing judgment. This power I should undoubtedly deny because there then immediately arises a contract against the party adjudged to pay a sum of money in favor of him to whom it is awarded.”
Both upon principle and authority I conclude that the legislature has no right, directly or indirectly, to annul in whole or in part a judgment or decree of a court already rendered, or to authorize the courts to reopen and rehear judgments and decrees already final, by which the rights of the parties are finally adjudicated, fixed and vested; and that every such attempt of legislative action is plainly an invasion of judicial power, and therefore unconstitutional and void.
But there is another ground upon which, I think, under the settled law and decisions of this court, the act of March 25th, 1873, must be held to be unconstitutional and void. I think it is plain that the act in question is in contravention of that provision of both the federal and state constitution which declares void all laws “which impair the obligation of a contract.”
*112 The judgment recovered by Anderson against Ratcliíí'e, and which was recovered seven years before the of the act authorizing a reoxiening of that judgment and rehearing of that ease, already passed ^■na^- judgment, was certainly a contract, and one of the highest nature.
Blackstone in his Commentaries divides contracts of debt into three classes—debts of record, debts by special, and debts by simple contract. “A debt of record (he says) is a sum of money which appears to be due by the evidence of a court of record. Thus, where any specific sum is adjudged to be due from the defendant to the plaintiff in an action or suit at law, this is a contract of the highest nature, being established by the sentence of a court of judicature. 1 Chitty’s Black., book 2 (marg.), page 455. See also opinion of Spencer, J., 7 Johns. R. 489, 490.
The judgment recovered by Anderson against Ratcliffe was a contract of the highest nature, and '"any legislature which authorizes a court to reopen that judgment and reduce it in amount necessarily impairs its obligation.
This court held in Roberts' adm’r v. Cocke, and Murphy v. Gaskins’ adm’r, that the act of the legislature found in ch. 173, § 14, Code 1873, p. 1120, which empowers courts or juries in all. suits for the recovery of money founded on contracts, express or implied, where the original consideration accrued prior to the 10th day of Aj>ril, 1865, to remit the interest found to be due, or any part thereof, for the period between the 17th April, 1861, and 10th April, 1865 ; and which also empowers the court in which any judgment or decree has been rendered prior to the passage of the act, on motion to review such judgment or decree, and abate the same to the extent of the interest aforesaid, to be unconstitutional and void. *113 This act was declared to he in contravention of the constitution because it impaired the obligation of a contract and interfered with vested rights. is sufficient on this branch of the case- to refer to the able and elaborate opinion of Judge Burks in these cases, and the authorities cited by him. It is
enough to say, upon the authority of these recent cases, that if an abatement of a part of the interest for which the judgment is rendered is declared to impair the obligation of the contract, then afortiori an abatement or reduction of the principal, for which a final judgment has been recovered, is certainly an impairment of the obligation of the contract, and. the statute which authorizes this to be done must, in like manner as the statute authorizing an abatement of interest, be declared to be unconstitutional and void. Upon the whole case I am of opinion, for the reasons stated, that there is no error in the judgment of the circuit court of Fairfax, and that the same must be affirmed.
The other judges concurred in the opinion of Christian, J.
Judgment affirmed.