TERRITORY OF OKLAHOMA *ex rel.* B. F. BRAY, *County Superintendent of Public Instruction of Lincoln County,* v. OLIVE STUBBLEFIELD.

1. QUALIFICATIONS FOR HOLDING OFFICE. Under § 5 or the Organic·Act of this territory, the legislature has the power and authority to prescribe the qualifications for holding office.

2. COUNTY SUPERINTENDENTS. The proviso found in § 9, ch. 73, relating to schools, is general in its application and applies alike to those elected as well as appointed to the office of county superintendent of public instruction.

3. CERTIFICATE. Where the evidence clearly shows that a person is not the holder of a first grade certificate by reason of not possessing the qualifications required under the law, as shown by a public examination, to entitle a person to hold such certificate, such person, although possessing a certificate which purports upon its face to show that he is qualified to hold a first grade certificate, will not be placed in possession of the office of county superintendent of public instruction if the examination papers, as returned by such person when examined for the certificate, clearly shows him not entitled to receive a first grade certificate.

*Original Proceeding in Mandamus.*

The opinion states the facts.

*L. E. Payne,* for relator.

*Asp, Shartel & Cottingham,* for respondent.

The opinion of the court was delivered by

DALE, C. J.: January 8, 1897, the relator, B. F. Bray, filed his petition in *mandamus* before the chief justice of this court for the purpose of obtaining possession of the books, public moneys, records, accounts, papers and documents of the office of county superintendent of public instruction of Lincoln county.   In his petition he alleged

that on the third day of November, 1896, he was a candidate for the office of county superintendent of public instruction for Lincoln county, and at said election received the largest number of votes cast for any candidate for said office and was duly elected to said office for the term of two years commencing on the first Monday of January, 1897. That on the sixth day of November, 1896, the county clerk and the commissioners of Lincoln county canvassed the returns of the election for the office for which he was a candidate, and after determining that he had received the highest number of votes cast at the election had, on November 3, 1896, made out and delivered to him a certificate of his election to the office. That on the fourth day of January, 1897, he duly qualified as county superintendent of public instruction, took the oath of office, entered into a bond with approved security and entered upon the discharge of the duties of his office. That Olive Stubblefield, the former county superintendent of public instruction for said county, refused his written demand for possession of the public moneys, books, records, accounts, papers and documents in her possession, belonging to the office of county superintendent of public instruction for said Lincoln county, and refused to surrender and vacate possession of the office and moneys, books, records, accounts and documents pertaining thereto, and the petitioner prayed that an alternative writ of *mandamus* issue to the said Olive Stubblefield to show cause, if any, why a peremptory writ should not issue to divest her of possession of the office and whatever might appertain thereto. The alternative writ was issued, as prayed, and return was made by the respondent alleging, in substance, that she was the duly elected and qualified county superintendent of public instruction for Lincoln county; that she received the

highest number of votes cast for any candidate for said office; denied that the county clerk and board of county commissioners of Lincoln county made and issued to the relator a certificate of election; denied that the relator ever qualified as county superintendent of public instruction for said county; admitted that she was the former county superintendent of public instruction for said county and that she was duly elected in the year 1894 for said office, and further alleged that on the third day of November, 1896, no person was chosen or elected to succeed her to the office, and also that the relator, B. F. Bray, was not qualified as required by law to take and hold the office; that he was never at any time a graduate of any institution of learning, and that he did not now hold, nor did he so hold at the date of the election, any first grade certificate of any kind or character authorizing him to teach in the public schools of the territory; that the only pretense of a certificate that was held by the relator was a spurious, false, forged and counterfeited certificate purporting to have been issued by one J. M. Bull, as county superintendent of public instruction of the county of Pottawatomie, good and effective only in said county, and not purporting to be good and effective in Lincoln county, and was never indorsed by the county superintendent of public instruction of Lincoln county as being good in Lincoln county.

Upon the issue thus joined the parties entered into an agreement which in substance stipulated that the cause might be tried on its merits under the issues raised in the pleadings, both parties waiving any question as to the form of the remedy and consenting that the court or judge trying the case might decide it according to the law and the rights of the parties and determine which

is entitled to the office of county superintendent of public instruction of Lincoln county, waiving any question of the inability of this court to hear and determine any such question on *mandamus* proceedings; further, that the cause might be submitted to the court, if the court was in session, at or about the time of the conclusion of the testimony, and if not in session might be heard by the chief justice, or by either or any of the associate justices which the chief justice might invite to sit with him in said case; and the parties waived the trial of said cause or any issue of fact involved therein by a jury and consented and agreed that the court or the judge trying the cause might determine and decide any issue of fact involved in the same, either in open court or in chambers, as the case might be, and might render a final decision in such cause, the effect of which final decision, if a peremptory writ of *mandamus* should be granted against the respondent, would be to divest her of all or any claim or title in and to said office, and in case a peremptory writ should be denied relator it shall have the effect of establishing the right and title of respondent in and to said office, and of adjudicating finally against the relator. In addition to the foregoing, and as a part of the agreement, it is stipulated that one Chas. H. Griswold should be appointed a commissioner to proceed to such place or places in the territory as might be agreed upon to examine each and all of the witnesses whom either party might produce and reduce such testimony to writing and return the same to the clerk of the supreme court for the use of the court or judge or judges in determining the facts of said cause. All of said testimony to be taken down in writing or typewriting and signed by the various witnesses and to be taken in the manner by law provided for the taking

of depositions of witnesses, giving to said commissioner the power to subpœna witnesses and to compel the production of papers, records, and whatever might be necessary to a full and proper investigation of the case.

In pursuance to this agreement and stipulation the parties proceeded to take the testimony of various witnesses at different places in the territory, and as the result of such action we have before us the record of the testimony adduced in the case, together with a large number of exhibits, from which we deduce the following facts:

B. F. Bray, the relator, was the candidate nominated by both the democratic and populist parties of Lincoln county for the office of county superintendent of public instruction for the election to be held on the third day of November, A. D. 1896. Olive Stubblefield, the respondent, was the nominee of the republican party of said county for the same office. She was, at the election in 1894, elected as county superintendent of public instruction for said county. Shortly after the relator was so nominated, it appears that a question arose as to his qualifications to hold the office by reason of the fact, as claimed, that he was not possessed of a diploma from any institution of learning, nor had he a first grade certificate as required under the statute of this territory as a prerequisite qualification to hold such office, and for the purpose of qualifying himself as by law required, he went to the county of Pottawatomie and there attended a public examination for teachers, held on the 28th and 29th days of October, 1896. The examiners duly appointed and qualified to hold such teacher's examination in Pottawatomie county were J. M. Bull, county superintendent of public instruction, E. G. Davis and

J. W. Lackey, the two last named being appointed under the law to aid the county superintendent in holding such examination.   It further appears that at the examination so held in Pottawatomie county upon the days aforesaid, the relator, Bray, failed to pass the required examination to obtain a first grade certificate, or indeed any certificate to teach in the public schools of this territory. The evidence upon this question we think fully appears by reason of the fact that attached as exhibits in this case are the examination papers submitted by Mr. Bray to the board of examiners, and from which papers the percentage of questions properly answered appear, and also the further evidence and testimony of the board of examiners, Bull, Davis and Lackey, each of said parties testifying that Bray failed in his examination to show himself qualified to receive any certificate under the laws of this territory.   The examination papers referred to as exhibits attached to the record show the following as the percentage given in the different branches upon which Bray was examined:

| | |
|---|---|
| Orthography | 34 per cent. |
| Reading | 40 " |
| Writing | 70 " |
| Arithmetic | 24 " |
| Geography | 50 " |
| Composition | 27 " |
| Constitution | 80 " |
| Grammar | 55 " |
| History | 36 " |
| Physics | 25 " |
| Bookkeeping | 35 " |
| Theory and Practice | 30 " |
| Physiology (not graded) | |

Notwithstanding the fact that the percentage so shown was that obtained by and granted to Bray at the

examination, it appears that during the campaign which preceded the election he did have in his possession a certificate which upon its face purported to show an average standing in the subjects examined of ninety and four-thirteenths per cent. and instead of reciting the true facts as to the percentage as obtained in the different subjects examined, shows the following:

| | |
|---|---|
| Orthography . . . | 90 per cent. |
| Reading . . . . . | 86 " |
| Writing . . . . | 90 " |
| English Grammar . . . . | 85 " |
| Composition . . . . | 95 " |
| Geography . . . . | 94 " |
| Arithmetic . . . | 95 " |
| U. S. History . . . | 98 " |
| Physiology and Hygiene . | 84 " |
| Theory and Practice . . | 96 " |
| Constitution of the United States | 92 " |
| Physics . . . . | 75 " |
| Bookkeeping . . . | 86 " |

Making, as heretofore stated an average standing of ninety and four-thirteenths per cent.

This certificate, upon its face, purported to be signed by J. M. Bull, county superintendent, and in all respects appears to be regular, and such a certificate as under the law shows the elegibility of the relator to hold the office of county superintendent of public instruction, unless the signature of Bull alone as county superintendent may be insufficient, and unless the same shall be held to be good only in the county in which it is issued. A large number of witnesses were examined for the purpose of determining whether the signature of J. M. Bull attached to the certificate was in fact the genuine or a forged signature of said party, also for the purpose of showing how Bray came in possession of such certificate,

but in as much as we do not deem that the possession of the certificate alone, under the evidence in this case, sufficiently evidences the qualifications of Bray to hold the office to which he was elected, in the face of the other testimony which, we think, conclusively establishes the fact that he had no right to obtain such certificate by reason of his failure to pass the required examination, we do not deem it necessary to pass upon the question as to whether the certificate was, in fact, a forged instrument, or whether it was issued under some collusive arrangement with Bull, of which Bray had knowledge and was a party. There is much testimony in support of either contention. It is impossible, upon an examination of this record to satisfy us that Bull did not sign the certificate, although he possitively denies ever having signed the same.

The only defense to the right of the relator to hold the office grows out of the fact, as claimed, that he was ineligible to the office by reason of not being possessed of a first grade certificate as by our law required. All other questions are eliminated in the record, in so far as the evidence is concerned, and the only question which arises in the evidence for our determination is whether or not a certificate, obtained as this certificate appears to have been, carries with it the right to take and hold the office to which relator was elected.

After the evidence was all taken, the relator, Bray, filed his motion to strike the agreement from the files on the ground that said agreement made and entered into by his attorney on January 9, 1897, was unauthorized, and was without his knowledge or consent, and in excess of the authority granted to said attorney, and because the agreement compromises the substantial rights of the

relator, in that it deprives him of a trial of the issues of fact by jury, and further, because it attempts to confer jurisdiction by consent to hear and determine the title to the office by *mandamus*. This motion comes too late. The court to which this cause is submitted has jurisdiction of the parties and the subject matter, and the action of *quo warranto* may as well be brought in this court as an action of *mandamus*, the court having very recently held, in a case coming up from Noble county, by a majority of the judges, that the supreme court of the territory had jurisdiction in *quo warranto* cases. The parties, by their agreement, expressly stipulated to waive the form of the action, to submit the issues of fact joined, to the chief justice, or any of the other judges to whom he might submit the cause, or to such of his associates as he might call to his aid in determining the questions involved. By this agreement it is immaterial what the form of the action may be, so long as the court has jurisdiction. By *quo warranto* proceedings, to try the title to office, the parties may agree to submit to such court for its judgment the issues involved in an action of that character, which is practically done by the agreement in this case, and it is too late now to say that the agreement entered into was in excess of the authority granted to the attorney for the relator. The agreement so entered into was filed on January 9. Thereafter the relator, in person, was present at all times during taking of the testimony, and not until the testimony was finally concluded did he object to the agreement made by his counsel. If, as a matter of fact, the agreement so made was in excess of the authority of counsel for the relator, his subsequent acts in appearing to the case and proceeding upon the lines of the agreement, ratified whatever of authority his counsel

may not have possessed at the time the agreement was made.

Counsel for relator, in the argument, urge, first, that the qualification required by our statute is a condition precedent to the right to hold the office of county superintendent of public instruction, to-wit, that such officer should possess a first grade certificate, was a qualification which under the law the legislative authority of this territory had no right to impose.

Second. That the proviso found in § 9, ch. 73, Laws 1893, relating to schools, is not a qualification required by a person who is elected to the office of county superintendent of public instruction, but one which can only be imposed upon a person appointed by the board of county commissioners to such office. Neither of the contentions so raised by counsel are tenable. Section 5 of our Organic Act, among other things, provides that the qualifications of voters and for holding office, after the first election held in this territory, under the provisions of our Organic Act, should be "such as may be prescribed by the legislative assembly," subject however, to certain restrictions which need not be enumerated here, as they do not apply in any manner to the case under consideration. This authority, so granted by congress, to the legislative assembly of this territory, is an express grant of authority to impose any reasonable condition which, in the judgment of the legislature, may be proper or necessary as a qualification for holding office in this territory. The contention of counsel that the proviso found in § 9, ch. 73, only applies to persons who are appointed to hold the office of county superintendent of public instruction, cannot be maintained for the reason that the proviso is general in its application, is not restricted in

terms to appointees, but by its language appears to have been intended to apply alike to all persons holding such office.    Section 9, referred to, reads as follows:

"SEC. 9.    When a vacancy occurs in the office of county superintendent of public instruction, by death, resignation or otherwise, notice thereof shall be given by the county clerk to the board of county commissioners, who shall, as soon a practicable, appoint some suitable person to fill the vacancy; and the person receiving appointment shall, before entering upon the discharge of the duties of his office, file his oath or affirmation, and bond, in the county clerk's office, as hereinbefore provided, and shall hold his office until his successor is elected and qualified: *Provided*, that no person shall be eligible to the office of county superintendent of public instruction who is not a graduate of some institution of learning, which shall be shown by diploma thereof, or that he is the holder of a first class certificate."

We now come to the principal question involved in this case:    Does the possession by the relator of a certificate, as obtained by him, give to him the right to take the office for which he was elected in view of the evidence in this case which shows his qualifications to receive such certificate and his manner of procuring the same?    Article 5, of ch. 73, entitled "Teachers and Certificates," provides for a board of county examiners who are authorized to issue certificates, the time when they shall hold their public examinations, and what the requirements of such examination are which must be met by any person seeking to obtain a certificate, which entitles the person so receiving the same to teach in the common schools of this territory.    The sections of art. 5, which bear upon this question are as follows:

"SEC. 1.    In each county there shall be a board of county examiners composed of the county superintendent,

who shall be *ex-officio* chairman of the board, and two competent persons, holders of first grade certificates or of territorial certificates, or of diplomas from some state university, state normal or state agricultural college who shall be appointed by the county commissioners on the nomination of the county superintendent, and shall serve from the time of their respective appointments until their successors are appointed, and each of whom shall receive for his services the sum of three dollars per day not to exceed three days in any one quarter of the year.

"Sec. 2. The board, two of whom shall constitute a quorum, shall, on the last Friday and Saturday of January, October, April and at the close of the county normal institute, only at such places as may be designated by the chairman, (who shall give ten days notice of examination), publicly examine all persons proposing to teach in the public schools of the county as to their competency to teach the branches prescribed by law, and such board of examiners shall issue certificates as hereinafter provided, to all such applicants as shall pass the required examination and satisfy the board as to their good moral character and their ability to teach and govern schools successfully.

"Sec. 3. Certificates issued by county board shall be of three grades, first, second and third, and shall continue in force, respectively, three years, two years and one year.

"Sec. 4. Certificates of the first grade shall certify that the person to whom issued is proficient in and fully qualified to teach orthography, reading, writing, English grammar, composition, geography, arithmetic, United States history, book-keeping, physiology and hygiene, civil government, (the theory and practice of teaching), elements of natural philosophy, and shall not be issued to persons under eighteen years of age, nor to such as have not taught successfully three school months: Provided, That no person who receive first grade certificates shall make a general average of less than ninety per

21—v.

cent., and in no case shall a person receive a certificate of the first grade who shall fall below seventy per cent. in any one one branch."

Section 5, following § 4, provides what the general average shall be to entitle a person to receive a certificate of the second grade, while § 6 provides what the said average shall be to entitle a person to receive a certificate of the third grade, while § 7 provides that no certificate shall be of force except in the county in which it is issued, provided, that the county superintendent may indorse the unexpired first grade certificates issued in other counties on payment of the fee of $1, which certificate shall thereby be valid in the county in which such indorsement is made for the unexpired term of the certificate.

From the foregoing it will appear that any person who is entitled, under the law, to receive a certificate of the first grade must, at the public examination held, make a general average of not less than 90 per cent., and in no case shall a person receiving such a certificate fall below 70 per cent. in any one branch. As we construe this law the board of examiners are the proper persons to issue a certificate. It might, perhaps, be properly done by the county superintendent acting as chairman of the board, but we will not indulge in any presumptions against the certificate received by Bray, because the same is simply signed "J. M. Bull, county superintendent," as we are of the opinion that if Bray, by his examination, had shown himself entitled to a certificate of the first grade, the fact that the same was not properly signed should not of itself be sufficient to invalidate the certificate, or make him ineligible to hold the office to which he was elected. The agreement made between the parties to this action carries with it the right to have the same discussed and

determined upon its merits, irrespective of any technical objections which may be raised by either party, and where the public interests are involved, as they are in this case, and the important right to hold a public office is a question to be determined, we do not think, even in the absence of the agreement of the parties, that we would be justified in withholding this office by reason of any mere technicality, or failure upon the part of some other public officer, or the board of examiners, to do their duty in granting and issuing the certificate. As stated in the findings of fact, we think it is immaterial, under the law, whether Bull signed this certificate or whether the same was procured from him by fraud. There can be no question as to the lack of Bray's qualifications to receive the certificate, as exemplified by his examination made for the purpose of showing his eligibility to the office in question. He has shown that he does not possess the qualifications for a first grade certificate in any branch upon which he was examined, unless upon the two, viz: writing and constitution. In writing he received a percentage of 70, and in constitution 80 per cent., while under the law his general average must have been 90 per cent., and in no branch could it fall below 70 per cent. to entitle him to a first grade certificate. Under these conditions he was clearly disqualified to receive such certificate. In his evidence, asked as to whether or not the examination papers were the ones which he had turned in as the result of his examination, he stated that he did not know; he refused to say whether the writing upon such examination papers was his or was that of some other person; he would neither deny nor affirm that the examination papers as exhibited in this record are genuine, but upon that question we are not left to his testimony alone. Each member

of the examining board testified, in effect, that the examination papers exhibited to them in this record are the identical ones returned by Bray, and in some instances they positively identify the figures showing the percentages in the different branches placed by some of the members of the examining board upon the exhibits, and comments which they had written upon some of them at the time they made the examination. Each member of the board also testifies positively that as a result of their examination they determined that Bray was not entitled to receive a certificate, and that, in so far as they had any knowledge, such decision had never been revoked. Shortly before the day of the election, County Superintendent J. M. Bull made a statement in writing, to be used publicly, showing the exact percentage obtained by Bray in the different branches upon which he had been examined. In fact, we have no difficulty in determining that these examination papers are genuine and the identical ones returned by Bray at his examination. Under such circumstances our duty seems clear. A person who seeks an office should qualify himself to hold the same. And we have no doubt of the wisdom of the legislature in providing that any person who is to exercise the important duties of county superintendent of public instruction shall possess the elementary educational qualifications which would enable such person to intelligently and properly direct the management of the common schools of a county. The legislature, by its action is seeking to elevate the common schools of our territory, and make them more proficient to meet the requirements for which they are intended, and we have no doubt that if special qualifications were required more generally than they are, of persons who seek and hold public office, the public would

be thereby greatly benefited.  But whatever our opinion might be upon this question, the act of the legislature is clearly within its powers, and even if we were disposed to criticize it, (which we are not), we would, if called upon, be obliged to give it the full scope intended by the legislature.  The wisdom of the law is very apparent in the case under consideration.  It would be idle to expect upon the part of teachers, skill and proficiency in their profession if the person authorized under the law to direct their movements, to instruct them in the theory and practice of teaching, and in the elementary branches to be taught in the public schools and to pass upon their qualifications to teach, if such person were himself entirely deficient in a knowledge necessary to enable him to properly perform those duties.

We conclude, therefore, first, that the qualification required is within the power of the legislature to demand; second, that the proviso found in § 9, *supra*, is general in its application and applies equally to elective as well as appointive officers, and third, that where, as in this case, the evidence conclusively shows that the party elected to the office does not possess the requisite qualifications under the law to hold the office, no relief should be granted to him which would enable him to oust a person legally in such office, until her successor is duly qualified to hold the same.

The judgment of the court is for the respondent in the action.

My associates kindly consented to sit with me in this case, and the result reached is the unanimous opinion of the court.