ATTORNEY GENERAL, *ex rel.* COOK, *v.* O'NEILL.

1. CONSTITUTIONAL LAW—SEPARATION OF POWERS.
   The theory of our government, both Federal and State, is one of separation of powers.

2. SAME—SOVEREIGNTY.
   Under our Constitution all political power is inherent in the people (Const. 1908, art. 2, § 1).

3. SAME—JUDICIAL POWER.

The judiciary is an independent department of the State government, deriving none of its powers from either of the other departments, nor may the other departments exercise, take away or interfere with the judicial power of the courts (Const. 1908, art. 4, §§ 1, 2; art. 7, §§ 1, 8).

4. SAME—PUBLIC TRUSTS—ELECTORS.

Excepting as particular exclusions are established by the Constitution, the electors and appointing authorities are, by the Constitution, wholly free to confer public stations upon any person at their pleasure.

5. SAME—ELIGIBILITY TO OFFICE.

Eligibility to office belongs not exclusively or especially to electors enjoying the right of suffrage but equally to all persons whomsoever not excluded by the Constitution.

6. SAME—ELIGIBILITY TO OFFICE—LEGISLATURE—JUDICIARY.

Neither the legislature nor the judiciary may establish arbitrary exclusions from office, or any general regulation annexing qualifications, which exclusion the Constitution has not established or which qualification it has not annexed.

7. SAME—SEPARATION OF POWERS—MAINTENANCE.

The three great powers of government—the legislative, the executive, and the judicial—should be preserved as distinct from and independent of each other as the nature of society and the imperfections of human institutions will permit.

8. SAME—JUDICIARY—LEGISLATURE'S POWER TO PRESCRIBE QUALIFICATIONS FOR OFFICE OF CIRCUIT JUDGE.

Under the division of powers in the State Constitution, the judiciary is an independent department of the State government and the legislature has no power to annex qualifications for circuit judges not found in the Constitution, hence statute prescribing admission to practise for period of eight years in order to be eligible for office of circuit judge is unconstitutional (Const. 1908, art. 2, § 1; art. 4, §§ 1, 2; art. 7, §§ 1, 8; Act No. 107, Pub. Acts 1935).

9. COSTS—PUBLIC QUESTION—CONSTITUTIONALITY OF STATUTE.

No costs are allowed in *quo warranto* proceeding to try title to the office of circuit judge where issue is constitutionality of statute prescribing qualification for such office, a public question being involved (Act No. 107, Pub. Acts 1935).

Information in the nature of *quo warranto* by Raymond W. Starr, Attorney General, upon his own relation and upon the relation of Arthur O. Cook and others against James E. O'Neill to determine title to the office of judge of the tenth judicial circuit. Submitted April 6, 1937. (Calendar No. 39,331.) Proceedings dismissed June 29, 1937.

*Raymond W. Starr,* Attorney General, *in pro. per.* (*Arthur O. Cook, Robert H. Cook, Robert J. Curry, George Grant, Robert T. Holland, Raymond R. Kendrick, William C. O'Keefe, Stanley R. Ostler, Emmanuel B. Reese, Frank A. Rockwith,* and *Jerome Weadock,* of counsel), for plaintiff.

*Frank A. Picard, Robert S. Beach* and *David Perrot,* for defendant.

SHARPE, J. The controlling facts involved in this application are not in dispute. Judge C. M. Browne, of the tenth judicial circuit died December 27, 1935, and on January 2, 1936, Alfred P. Pierson was appointed by the governor to fill the vacancy. He qualified and has performed the duties of circuit judge. At the general election held November 3, 1936, Judge Pierson and the defendant, James E. O'Neill, were candidates for the office. It resulted in Mr. O'Neill receiving the highest vote. The State board of canvassers certified to the election of Mr. O'Neill and he has since been acting as circuit judge, although Mr. Pierson claims that he (Pierson) has not surrendered up, nor abandoned the office.

Mr. O'Neill was admitted to the bar of the State of Michigan August 7, 1928, on motion in the circuit court for the county of Saginaw, but did not file with the clerk of the Supreme Court of this State his affi-

davit showing his name, residence, citizenship, and the court by which he was admitted to practice in this State as required by 3 Comp. Laws 1929, § 13578, until March 10, 1932.

It is plaintiff's claim that under the statutes of this State James E. O'Neill is not qualified for circuit judge because of 3 Comp. Laws 1929, § 13578, which provides:

"In case of admission to practise otherwise than on motion made in the Supreme Court, no person shall be entitled to practise as an attorney and counselor in the courts of the State until he files with the clerk of the Supreme Court his affidavit showing his name, residence, citizenship and the court by which he was admitted to practise in this State, together with a certified copy of the order upon which the admission was made."

And Act No. 107, § 40, Pub. Acts 1935, which provides:

"No person shall be eligible for election or appointment to the office of circuit judge in this State, unless he be a regularly licensed attorney and counselor, duly admitted to practise in all the courts of this State, for at least a period of eight years prior to such election."

The defendant contends that Act No. 107, Pub. Acts 1935, is unconstitutional for the reason that the legislature has no right, power or authority to legislate upon the qualifications of a judge of any of the courts of our State; and that if the legislature has power to enact legislation affecting the qualifications of circuit judges, then Act No. 107, Pub. Acts 1935, is unconstitutional because it is discriminatory, unreasonable and capricious, so as to be in violation of

the "due process" and "equal protection of the law" clauses of our State and Federal Constitutions.

In our examination of the Constitution of Michigan adopted in 1908, we find that it provides as follows:

"All political power is inherent in the people. Government is instituted for their equal benefit, security and protection." Article 2, § 1.

"The powers of government are divided into three departments: The legislative, executive and judicial." Article 4, § 1.

"No persons belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution." Article 4, § 2.

"The judicial power shall be vested in one Supreme Court, circuit courts, probate courts, justices of the peace and such other courts of civil and criminal jurisdiction, inferior to the Supreme Court, as the legislature may establish by general law, by a two-thirds vote of the members elected to each house." Article 7, § 1.

"The legislature may provide by law for the election of more than one circuit judge in any judicial circuit. * * * Each circuit judge shall hold court in the county or counties within the circuit in which he is elected, and in other circuits as may be provided by law. The legislature may by law arrange the various circuits into judicial districts, and provide for the manner of holding courts therein. Circuits and districts may be created, altered or discontinued by law, but no such alteration or discontinuance shall have the effect to remove a judge from office." Article 7, § 8.

The theory of our government, both Federal and State, is one of separation of powers. Washington in his Farewell Address said:

"It is important that the habits of thinking in a free country should inspire caution in those intrusted with its administration to confine themselves within their respective constitutional spheres, avoiding in the exercise of the powers of one department to encroach upon another.    *    *    *    The necessity of reciprocal checks in the exercise of political power, by dividing and distributing it into different depositories, and constituting each the guardian of the public weal against invasions by the others, has been evinced by experiments ancient and modern, some of them in our country and under our own eyes. To preserve them must be as necessary as to institute them."

In *Public Schools of the City of Battle Creek* v. *Kennedy,* 245 Mich. 585, we said:

"Under our Constitution 'all political power is inherent in the people,' Constitution, (1908) art. 2, § 1."

And in *Common Council of Detroit* v. *Engel,* 202 Mich. 536, we said:

"Without the Constitution which the people in their sovereign power have ordained and established as the form of government for the State, delineating in it certain first principles of our fundamental laws, there would be no legislative or other State governmental departments as they now exist."

In 6 R. C. L. p. 157, § 157, it is stated:

"The judiciary is an independent department of the State government, deriving none of its judicial power from either of the other departments. * * * In a general way, the courts possess the entire body of judicial power. The other departments cannot properly assume to exercise any part of this power; it cannot be taken away by a legislative action, nor is

the legislature permitted to interfere with the courts in the performance of their duties."

In *Barker* v. *People,* 3 Cow. (N. Y.) 686, (15 Am. Dec. 322), it is said:

"Eligibility to public trusts, is claimed as a constitutional right, which cannot be abridged or impaired. The Constitution establishes and defines the right of suffrage; and gives to the electors, and to various authorities, the power to confer public trusts. * * * Excepting particular exclusions thus established, the electors and the appointing authorities are, by the Constitution, wholly free to confer public stations upon any person, according to their pleasure. The Constitution giving the right of election and the right of appointment; these rights consisting essentially, in the freedom of choice; and the Constitution also declaring, that certain persons are not eligible to office; it follows from these powers and provisions, that all other persons are eligible. Eligibility to office, is not declared as a right or principle, by any express terms of the Constitution; but it results, as a just deduction, from the express powers and provisions of the system. The basis of the principle, is the absolute liberty of the electors and the appointing authorities, to choose to appoint, any person, who is not made ineligible by the Constitution. Eligibility to office, therefore, belongs, not exclusively or especially to electors, enjoying the right of suffrage. It belongs equally, to all persons whomsoever, not excluded by the Constitution. I therefore conceive it to be entirely clear, that the legislature cannot establish arbitrary exclusions from office, or any general regulation requiring qualifications, which the Constitution has not required. If, for example, it should be enacted by law, that all physicians, or all persons of a particular religious sect, should be ineligible to public trust;

or that all persons not possessing a certain amount of property, should be excluded; or that a member of the assembly must be a freeholder; any such regulation, would be an infringement to the Constitution; and it would be so, because, should it prevail, it would be in effect, an alteration of the Constitution itself."

The plaintiff contends that while the Michigan Constitution prescribes no qualifications for a circuit judge, yet there are no restrictions upon the power of the legislature to prescribe such qualifications and cites *Kelley* v. *Edwards,* 38 Mich. 210, as authority for the proposition that the legislature has authority to determine who shall occupy the office of judge of probate. We have examined this case. It pertains to an act of the legislature which provides that when the office of a judge of probate is vacant, the circuit court commissioner shall perform such duties. A close examination of this case will determine that while an act of the legislature was involved, yet the act did not prescribe qualifications for a judge of probate. We have also examined *In re Bonam,* 255 Mich. 59, and find that this case is not in point. Counsel for plaintiff have cited many cases from other jurisdictions but in our opinion they are not controlling of the question involved here.

In *People, ex rel. Hughes,* v. *May,* 3 Mich. 598, 610, we find this statement:

"We concede, to the fullest extent, that it is not in the power of the judiciary, or even the legislature, to establish arbitrary exclusions from office, or annex qualifications thereto, when the Constitution has not established such exclusions nor annexed such qualifications."

While the statement above quoted was *dicta* at the time of its writing, yet it represents our views on the

question involved in the instant case. In *People* v. *McMurchy,* 249 Mich. 147, 156, we said:

"The legislature may not divest the courts of their judicial power, and a statute that takes away a power of the court to direct a verdict is unconstitutional. It is an unwarranted interference with the judicial power by the legislature."

In *Kiley* v. *Railway Co.,* 138 Wis. 215, (119 N. W. 309, 120 N. W. 756), cited in *Bielecki* v. *United Trucking Service,* 247 Mich. 661, it is said:

" 'The powers of the court and jury in the administration of the law in these respects were distinct and well defined at the time of the adoption of our Constitution and became vested in the court and jury by its provisions. They cannot be abrogated or modified by legislative action to the extent of impairing, in any degree, the judicial power. Under the Constitution courts have become vested with the judicial power to determine the questions of the legal sufficiency of the evidence to establish the rights of the parties at issue and to apply the law to the facts when found, and this power cannot be withdrawn from them and conferred on juries.' * * *

"The people of the State of Wisconsin, through the Constitution ordained by them, have conferred upon the courts of this State the judicial power, which includes the power finally to construe, interpret, and apply the law in private as well as public matters. The Constitution having confided this high prerogative to the courts, they would be plainly derelict in their duty if upon any pretense whatever they permitted the powers so confided to them to be exercised by other than judicial officers."

In *Anway* v. *Railway Co.,* 211 Mich. 592 (12 A. L. R. 26), we said:

"By the Constitution the judicial power was vested in the courts and it was vested in no other department of government. To the courts was committed the judicial power and no other. Much has been said of the division of powers, but it was so well put by

the court of appeals of Virginia in *Ratcliffe* v. *Anderson*, 31 Grat. (72 Va.) 105 (31 Am. Rep. 716), that we quote it. It was there said:

" 'It is now too well settled to admit of serious dispute that the legislative department can no more exercise judicial power than that the judicial department can exercise legislative power. Each is supreme in the exercise of its own proper functions within the limits of its authority. The boundary line of these powers is plainly defined in every well-ordered government; and in this country it is now a well-established principle of public law that the three great powers of government—the legislative, the executive, and the judicial—should be preserved as distinct from and independent of each other as the nature of society and the imperfections of human institutions will permit. That system which best preserves the independence of each department approaches nearest to the perfection of civil government and the security of civil liberty.' "

The conclusion is inevitable that under the division of powers in the Michigan Constitution the judiciary is an independent department of the State government and the legislature has no power to annex qualifications for circuit judges not found in the Constitution. Act No. 107, Pub. Acts 1935, is therefore declared unconstitutional for the reasons above stated.

These proceedings must be dismissed, but without costs as a public question is involved.

FEAD, C. J., and BUSHNELL, POTTER, and CHANDLER, JJ., concurred with SHARPE, J.

POTTER, J. (*concurring*). Information in the nature of *quo warranto* was filed in this court December 9, 1936, by the attorney general, upon the relation of various citizens, taxpayers and electors, residents of the city of Saginaw, attorneys and counselors at law duly admitted to practice in said State, against James E. O'Neill who claimed that at an election for said office held November 3, 1936, he was duly elected to the office of circuit judge for Saginaw county. Information in the nature of *quo*

*warranto* was based upon Act No. 107, Pub. Acts 1935, which provides:

"No person shall be eligible for election or appointment to the office of circuit judge in this State, unless he be a regularly licensed attorney and counselor, duly admitted to practice in all the courts in this State, for at least a period of eight years prior to such election."

It is admitted the respondent did not file his affidavit with the clerk of the Supreme Court, together with a certified copy of the order upon which his admission was made, as required by 3 Comp. Laws 1929, § 13578, until March 10, 1932. And relator contends for this reason respondent is ineligible to hold the office of circuit judge.

By the Constitution of 1908, art. 7, § 1, the judicial power is vested in one Supreme Court, circuit courts, probate courts, justices of the peace and such other courts of civil and criminal jurisdiction inferior to the Supreme Court, as the legislature may establish by general law, by a two-thirds vote of the members elected to each house.

The Constitution of 1908, art. 7, § 8, also provides:

"The State shall be divided into judicial circuits in each of which there shall be elected one circuit judge. The legislature may provide by law for the election of more than one circuit judge in any judicial circuit."

The Constitution of 1908, art. 7, § 9, also provides:

"Circuit judges shall be elected on the first Monday in April, nineteen hundred eleven, and every sixth year thereafter. They shall hold office for a term of six years and until their successors are elected and qualified. They shall be ineligible to any

other than a judicial office during the term for which they are elected and for one year thereafter."

It is the theory of our government that sovereignty resides in the people,—that governments derive their just power from the consent of the governed.

"All the political power is inherent in the people." Const. 1908, art. 2, § 1.

"The powers of government are divided into three departments: The legislative, executive and judicial." Const. 1908, art. 4, § 1.

"No person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution." Const. 1908, art. 4, § 2.

In framing the Constitution of 1908, the convention followed the provisions of the Constitution of 1850.

Constitution of 1908, art. 5, §§ 5, 6, 7, prescribe the qualifications for senators and representatives in the State legislature. Art. 6, §§ 13, 14, prescribe the qualifications for governor. Art. 7, § 9, discusses the ineligibility of circuit judges for any other than a judicial office during the term for which they are elected, and for one year thereafter.

Can the legislature, by enacting a law, require additional qualifications to those prescribed in the Constitution for judges of the circuit court? Can it be that, under our constitutional system, the legislature of the State may fix the qualifications of judges of the circuit court, and also create a board to determine whether a particular candidate for circuit judge has the necessary qualifications? How far can the legislative department of government go in prescribing qualifications for those who exercise the functions of the judicial department? Can it fix

any other qualifications than those prescribed by the people in the Constitution? Can the legislature say that a candidate for circuit judge must have practiced law in the State of Michigan for eight years? And, if such legislation is valid, can it say that the candidate must have practiced law in this State for 30 years, or 60 years, or 90 years? Can the legislature add anything to the constitutional qualifications required by the people in the exercise of their sovereignty as prescribed by the Constitution? And, if it may do so, how far may it go?

Prior to the Constitution of 1850, the judges of the Supreme Court, both in the territory and the State, presided over the circuit courts, except for a brief period when there was a circuit court comprising the entire lower peninsula of Michigan presided over by a circuit judge. But even at this time the judges of the Supreme Court presided over the circuit court in Wayne county. During the territorial period, two of the judges of the Supreme Court who presided over the several circuit courts of the State were not lawyers, *viz:* Frederick Bates, subsequently governor of Missouri, but who was admitted to the bar sometime after he occupied the office of judge,—and James Witherell, who not only was a member of the court but chief justice at one time, and had as his qualifications a record as a Revolutionary soldier, as a physician, and as a member of congress, but who became a judge without being admitted to the bar.

After the adoption of the Constitution of 1835, and the enactment of the statute of 1836 (Pub. Acts 1836, p. 30), judges of the Supreme Court, under the Constitution, were appointed by the governor, by and with the advice and consent of the senate, and these judges of the Supreme Court presided over

the several circuits. In the several circuits, they were assisted by two associate judges of the circuit courts who were elected by the people of the county in which the circuit court was held, and I think it may be said that, generally, these associate justices of the circuit court were not members of the bar.

The Constitution was amended in 1849, and thereafter the judges of the Supreme Court were elected by the people.

Under the Constitution of 1850, it was provided the several circuit judges should be judges of the Supreme Court, four of whom should constitute a quorum. Nothing was said about their qualifications. The people, having the right to elect these officers, were supposed to exercise sufficient intelligence to select people qualified for the position.

In a note by the reporter to *People, ex rel. Hughes,* v. *May,* 3 Mich. 598, it is said:

"By a singular oversight, in most of the State constitutions, there are no provisions requiring that either judges or prosecuting attorneys should be men learned in the law, or rendering persons ineligible unless admitted to practice as attorneys."

In Mechem on Public Officers (1st Ed.), § 65, it is said:

"It is entirely competent for the people, in framing their governments, to declare what shall be the qualifications which shall entitle one to hold and exercise a public office, and in many of the Constitutions this has been done with more or less certainty and precision. Constitutional provisions, which are exclusive in their nature, are, of course, supreme, and it is not within the power of legislatures to supersede, evade or alter them."

"Where the Constitution has prescribed the qualifications, the possession of which shall entitle an in-

dividual to hold office under the State, it is not within the power of the legislature to change or add to them, unless such power be given to the legislature either in express terms or by necessary implication." Mechem on Public Officers (1st Ed.), § 96.

"Where, then, an office is created by statute, it may, in the absence of constitutional prohibitions, be entirely abolished, or its term may be increased or diminished, or the manner of filling it may be changed, or its compensation may be altered, or its duties may be diminished or increased, at the will of the legislature." Mechem on Public Officers (1st Ed.), § 465.

"It is clear that where the Constitution prescribes the qualifications for holding office, any act of the legislature contravening directly or indirectly the mandates of the Constitution in that respect is unconstitutional." Throop on Public Officers (1st Ed.), § 73.

In *People, ex rel. Hughes,* v. *May, supra,* it is said:

"It is not in the power of the judiciary, or even the legislature, to establish arbitrary exclusions from office, or annex qualifications thereto, when the Constitution has not established such exclusions nor annexed such qualifications."

Under the title "Construction of State Constitutions," 1 Cooley's Constitutional Limitations (8th Ed.), p. 139, says:

"Another rule of construction is, that when the Constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases. On this ground it has been held by the Supreme Court of Maryland,

that where the Constitution defines the qualifications of an officer, it is not in the power of the legislature to change or superadd to them, unless the power to do so is expressly or by necessary implication conferred by the Constitution itself,'' citing *Thomas* v. *Owens,* 4 Md. 189.

Other cases recognizing the same principle are referred to in the notes appended thereto, and among other things it is said: ''The legislature cannot add to the constitutional qualifications of an officer,'' citing *People, ex rel. Hoyne,* v. *McCormick,* 261 Ill. 413 (103 N. E. 1053, Ann. Cas. 1915A, 338); *Feibleman* v. *State, ex rel. Brown,* 98 Ind. 516; *State* v. *Craig,* 132 Ind. 54 (31 N. E. 352, 16 L. R. A. 688, 32 Am. St. Rep. 237); *State, ex rel. Workman,* v. *Goldthait,* 172 Ind. 210 (87 N. E. 133, 19 Ann. Cas. 737); *Barker* v. *People,* 3 Cow. (N. Y.) 686 (15 Am. Dec. 322).

In *Sheehan* v. *Scott,* 145 Cal. 684 (79 Pac. 350), it is said:

''It is not contended by the appellant that the Constitution contains any express inhibition upon the legislature against prescribing qualifications for the officers whose appointment or election it may authorize, but he contends that the designation in the Constitution of the qualifications of certain officers named therein creates an implication that in all other cases no other qualification shall be required than those of an elector. It may be admitted that the legislature can neither increase nor diminish the qualifications which the Constitution has prescribed for eligibility to any of the offices created by that instrument; but for all offices which the legislature may authorize or establish, either by virtue of express authority therefor in the Constitution itself, or by virtue of its general legislative authority, it may prescribe such qualifications as in its judgment

will best accord with public policy or subserve the interests of those affected thereby.''

In *Fordyce* v. *State, ex rel. Kelleher,* 115 Wis. 608 (92 N. W. 430), it is said:

''The theory of counsel is that eligibility to public trusts is a constitutional right, which cannot be abridged or impaired; that, under the Constitution, the electors and the appointing authorities are wholly free to confer public stations upon any elector, according to their pleasure; and that this results as a just deduction from the express powers and provisions of our constitutional system. As a general proposition, and as applied to strictly constitutional officers, this may be true. But the rule has certain qualifications. The Constitution prescribes no definite qualifications as to eligibility to the office of attorney general or district attorney, yet we apprehend that, if the question were raised, the courts would be obliged to say that none but attorneys at law were eligible. As remarked in *State* v. *Russell,* 83 Wis. 330 (53 N. W. 441), the name of the office implies the qualification. See *People, ex rel. Hughes,* v. *May,* 3 Mich. 598. The general proposition that the legislature has no power to prescribe arbitrary tests and qualifications for offices created by the Constitution is admitted.'' ·

In *State, ex rel. Lamar,* v. *Dillon,* 32 Fla. 545 (14 South. 383, 22 L. R. A. 124), it is said:

''Where a Constitution has conferred the right and prescribed the qualifications of electors it, of course, is paramount until amended, and the legislature cannot change or add to them in any way; but where the Constitution does not fix the right of suffrage or prescribe the qualifications of voters it is competent for the legislature as the representative of the lawmaking power of the State to do so.''

In *State, ex rel. Lee,* v. *Dunn,* 73 N. C. 595, it is said:

"It has been stated already what are the qualifications for office; and that no others can be prescribed by the legislature or required by the board."

In *People, ex rel. Hoyne,* v. *McCormick, supra,* it is said:

"Where the Constitution declares the qualifications for office it is not within the power of the legislature to change or add to them unless the Constitution gives that power. 'It would seem but fair reasoning, upon the plainest principles of interpretation, that when the Constitution established certain qualifications as necessary for office it meant to exclude all others as prerequisites. From the very nature of such a provision the affirmance of these qualifications would seem to imply a negative of all others. * * * * A power to add new qualifications is certainly equivalent to a power to vary them.' (1 Story on the Constitution [5th Ed.], § 625.) * * *

"There is a distinction between offices created by the Constitution and those created by statute. Where an office is created by statute it is wholly within the power of the legislature creating it. The length of term and mode of appointment may be altered at pleasure and the office may be abolished altogether. (*People, ex rel. Akin,* v. *Loeffler,* 175 Ill. 585 [51 N. E. 785]; *People, ex rel. Sadler,* v. *Olson,* 245 Ill. 288 [92 N. E. 157].) It is not so of constitutional offices. Section 3 of article 4 of the Constitution declares that no person shall be a senator who shall not have been for two years next preceding his election a resident within the district from which he is elected. An act requiring a candidate for senator under certain circumstances to be nominated from a particular county of the district was held to be not

within the power of the legislature, for the reason that it added to the qualifications required by the Constitution by imposing the additional restriction as to residence. *People, ex rel. Breckon,* v. *Board of Chicago Election Com'rs,* 221 Ill. 9 (77 N. E. 321, 5 Ann. Cas. 562). * * *

"While counsel for the appellant concede that a constitutional provision as to eligibility to office of such a nature that it covers the whole subject matter, by necessary implication prohibits any addition to or change in the qualifications prescribed, yet they contend that as to qualifications which affect the fitness for office, of which it is said residence is one, the constitutional provision is only a minimum or maximum limitation, leaving to the legislature a reasonable but not arbitrary discretion to add further reasonable requirements. The cases of *State, ex rel. Attorney General,* v. *Covington,* 29 Ohio St. 102, *Darrow* v. *People,* 8 Col. 417 (8 Pac. 661), and *State, ex rel. Thompson,* v. *McAllister,* 38 W. Va. 485 (18 S. E. 770, 24 L. R. A. 343), support the argument, but we do not approve the conclusion reached in those cases."

In *Barker* v. *People, supra,* it is said:

"Eligibility to public trusts, is claimed as a constitutional right, which cannot be abridged or impaired. The Constitution establishes and defines the right of suffrage; and gives to the electors, and to various authorities, the power to confer public trusts. It declares that ministers of religion, shall be ineligible to any office; it prescribes, in respect to certain offices, particular circumstances, without which, a person is not eligible to those stations; and it provides that persons holding certain offices, shall hold no other public trust. Excepting particular exclusions thus established, the electors and the appointing authorities are, by the Constitution, wholly free to confer public stations upon any person, accord-

ing to their pleasure.   The Constitution giving the right of election and the right of appointment; these rights consisting essentially, in the freedom of choice; and the Constitution also declaring, that certain persons are not eligible to office; it follows from these powers and provisions, that all other persons are eligible.   Eligibility to office, is not declared as a right or principle, by any express terms of the Constitution; but it results, as a just deduction, from the express powers and provisions of the system.   The basis of the principle, is the absolute liberty of the electors and the appointing authorities, to choose and to appoint, any person, who is not made ineligible by the Constitution.   Eligibility to office, therefore, belongs, not exclusively or especially to electors, enjoying the right of suffrage.   It belongs equally, to all persons whomsoever, not excluded by the Constitution.''

In *Feibleman* v. *State, ex rel. Brown, supra,* it is said :

''Section 6 of article 6 of the Constitution of the State reads: 'All county, township, and town officers shall reside within their respective counties, townships, and towns; and shall keep their respective offices at such places therein, and perform such duties as may be directed by law.' R. S. 1881, § 156. The rule seems to be that where the Constitution defines the qualifications of an officer, the Legislature may not change or require additional qualifications unless the power to do so is conferred by the Constitution itself.   *Thomas* v. *Owens,* 4 Md. 189; *In Matter of Dorsey,* 7 Port. (Ala.) 293; Cooley Constitutional Limitations (5th Ed.), § 64.   Involving the same principle, it has been held that the Legislature cannot add to the constitutional qualifications of a voter.   *Quinn* v. *State,* 35 Ind. 485 (9 Am. Rep. 754) ; Cooley Constitutional Limitations (5th Ed.), § 64; *Rison* v. *Farr,* 24 Ark. 161 (87 Am. Dec. 52).''

In *State, ex rel. Workman,* v. *Goldthait, supra,* it is said:

"The general assembly cannot impose qualifications upon officers beyond those prescribed by the Constitution. *State, ex rel. Thompson,* v. *McAllister* (1893), 38 W. Va. 485, 489, (18 S. E. 770, 24 L. R. A. 343, 345); *Darrow* v. *People* (1885), 8 Col. 417, 420 (8 Pac. 661); *State, ex rel. Attorney General,* v. *Covington* (1876), 29 Ohio St. 102, 117; *Mason* v. *State, ex rel. McCoy* (1898), 58 Ohio St. 30, 54 (50 N. E. 6, 41 L. R. A. 291); *People, ex rel. Hughes,* v. *May* (1855), 3 Mich. 598; *Attorney General* v. *Abbott* (1899), 121 Mich. 540, 546 (47 L. R. A. 92); *State, ex rel. Lee,* v. *Dunn* (1875), 73 N. C. 595, 606; *State, ex rel. Attorney General,* v. *Woodson* (1867), 41 Mo. 227, 230; *State, ex rel. Ing,* v. *McSpaden* (1897), 137 Mo. 628, 635 (39 S. W. 81); *State, ex rel. Tesch,* v. *Von Baumbach* (1860), 12 Wis. 310, 312; *Fordyce* v. *State, ex rel. Kelleher* (1902), 115 Wis. 608, 614 (92 N. W. 430); *Territory, ex rel. Bray,* v. *Stubblefield* (1897), 5 Okla. 310, 319 (48 Pac. 112); *Sheehan* v. *Scott* (1905), 145 Cal. 684 (79 Pac. 350, 351); *State, ex rel. Attorney General,* v. *Dillon* (1893), 32 Fla. 545, 569 (14 South. 383, 22 L. R. A. 124); *State, ex rel. Attorney General,* v. *Bryan* (1905), 50 Fla. 293, 376 (39 South. 929); *State, ex rel. Thornburg,* v. *Huegle* (1907), 135 Iowa, 100, 101 (112 N. W. 234); *Shaw* v. *City Council, etc.* (1906), 131 Iowa, 128 (104 N. W. 1121, 10 L. R. A. [N. S.] 825, 829, 9 Ann. Cas. 1039)."

In *Cummings* v. *Missouri,* 4 Wall. (71 U. S.) 277, 321 it is said:

"The theory upon which our political institutions rest is, that all men have certain inalienable rights—that among these are life, liberty, and the pursuit of happiness; and that in the pursuit of happiness all avocations, all honors, all positions, are alike open to every one."

Suppose one had served creditably as circuit judge for six years prior to the passage of Act No. 107, Pub. Acts 1935. Could he then be prevented from succeeding himself by this arbitrary legislative enactment? If a circuit judge should become too popular in the opinion of the legislature, may that body, by statute prescribing additional qualifications, prevent him from being reelected? To so hold would enable the legislative department to encroach upon the judiciary and to prescribe qualifications which the people themselves denied. The appropriate way to maintain the constitutional division of powers is to deny to any department of government the right to encroach upon the others, and to deny to the legislative department the power to prescribe qualifications additional to those which the people themselves prescribed in the Constitution for members of the judiciary.

Respondent is not ineligible to hold the office of circuit judge. His ouster from that office will be denied. A public question being involved, no costs are awarded.

CHANDLER, J., concurred with POTTER, J.

NORTH, J. (*concurring*). I concur in the result reached by Mr. Justice SHARPE and Mr. Justice POTTER; but I am not in accord with the reasoning by which that result has been obtained. The opinion of the former unduly restricts the powers of the legislative branch of our State government; and the opinion of Mr. Justice POTTER appears to me to be based upon the erroneous assumption that the qualifications requisite to serve as a circuit judge are expressed in our Constitution. I know of no such constitutional provisions in this State.

"Where, however, the Constitution does not pre-
scribe the qualifications (for public office); it is the
province and the right of the legislature to declare
upon what terms and subject to what conditions the
right shall be conferred." Mechem—Public Offices
and Officers (1st Ed.), § 66.

I think James E. O'Neill was qualified for the
following reasons: He was admitted to the practice
of law in this State August 7, 1928, and continued
thereafter in the practice of law for more than eight
years preceding his election. He did not file the
statutory affidavit (3 Comp. Laws 1929, § 13578),
with the clerk of the Supreme Court until March 10,
1932; but nonetheless he was licensed by the circuit
court of Saginaw county as an attorney and counsel-
lor and acted as such for more than eight years pre-
ceding his election as circuit judge on November 3,
1936. In so doing he was an officer of the court and
might be denominated an attorney *de facto.* This
should be held to be substantial compliance with the
statute (Act No. 107, Pub. Acts 1935) which renders
one ineligible to the office of circuit judge except he
has been regularly licensed as an attorney and
counsellor in this State for at least eight years prior
to his election. The obvious purpose of this statute
is the requirement of at least eight years' experience
in the profession as an element of eligibility. The
respondent has this qualification. In such a situa-
tion the statutory requirement of filing with the clerk
of the Supreme Court should be held merely direc-
tory; and not an indispensable requisite to eligi-
bility to the office of circuit judge. To hold other-
wise is to make the statutory provision arbitrary
and unreasonable because it would then make eligi-
bility to an important public office turn upon the

perfunctory formality of having filed or not having filed a paper in a public office, which filing in no way affects the elected officer's qualifications to discharge the duties of the office. Regardless of its construction for other purposes, as to the right involved in the instant case the provisions of 3 Comp. Laws 1929, § 13578 should be held to be directory only.

Notwithstanding it may not be said to be controlling, as being somewhat persuasive that the above construction of the statute is in accord with the legislative intent, the recent amendment to 3 Comp. Laws 1929, § 13578 may be noted. By this amendment (Act No. 43, Pub. Acts 1937; given immediate effect) it is now provided:

"Any person who has heretofore been or may hereafter be admitted to practice law in this State on motion duly made in any circuit court of the State and whose name appears on said official register, shall be considered to have been admitted to practice in all the courts of this State as of the date of such admission in the circuit court."

While it is not essential to decision herein, it may also be noted there are adjudications sustaining the proposition that courts will not deprive one of an office after his previous lack of qualification has been removed by legislative enactment, although passed subsequent to the commencement of proceedings to test his right to hold the office. *Attorney General, ex rel. Jackson,* v. *James,* 74 Mich. 733; *Huff* v. *Cook,* 44 Iowa, 639; *Widincamp* v. *Wood,* 167 Ga. 57 (144 S. E. 900). In the last case the court said:

"At the time of the trial, the law having been changed, the person whose right to the office was the subject of inquiry was eligible to election, and was

eligible to hold the office, and being so, the law will not turn him out of office merely because he was ineligible when he was elected and received his commission." (Citing numerous cases.)

See, also, Cooley's Constitutional Limitations (8th Ed.), p. 787.

These proceedings should be dismissed, but without costs.

WIEST and BUTZEL, JJ., concurred with NORTH, J.