STATE, EX REL. RAY O. CASTLE, RELATOR, V. WILLIAM SCHROEDER ET AL., RESPONDENTS.

FILED SEPTEMBER 19, 1907. No. 15,209.

1. **Cities: FILLING VACANCIES IN OFFICES.** The provisions of the general election law (Comp. St., ch. 26, secs. 105, 107) for filling vacancies in office apply to the office of alderman of the city of Lincoln, there being no special provision of the act governing cities of that class, nor of the ordinances enacted thereunder, which are inconsistent therewith.

2. ———: ———. One appointed to fill a vacancy in the office of alderman of a city of the first class having more than 40,000 and less than 100,000 inhabitants holds only until the next general election (Comp. St., ch. 26, sec. 107), which is the next election at which the vacancy can be filled (sec. 105), to wit, the next regular municipal election.

ORIGINAL application for a writ of mandamus to compel respondents, as members of city council, to canvass vote. *Writ allowed.*

*W. L. Anderson, Roscoe Pound* and *John S. Bishop,* for relator.

*A. S. Tibbets, E. C. Strode* and *T. J. Doyle, contra.*

SEDGWICK, C. J.

By an amendment to the statute governing cities of the first class enacted in 1905, it was provided that at a special election in that year seven aldermen should be elected,

(759)

who should hold their office for the term of four years, until the municipal election in the year 1909. One of the aldermen elected at the special election died in November of that year, and the respondent, William Schroeder, was appointed to fill the vacancy caused by his death. At the general municipal election in 1907 the relator was nominated by one of the political parties, and, having been a candidate for election, received the highest number of votes for that office, and demanded that the respondents, as councilmen and aldermen of the city, canvass the vote cast at that election for aldermen and declare the result. They having refused to do so, this application was made to this court for a writ of mandamus. The question thus presented is whether respondent, Schroeder, by virtue of his appointment, is entitled to hold the office for the remainder of the unexpired term of the deceased alderman, or at the next municipal election thereafter, which was the spring election of 1907, an alderman should be elected for the remainder of that term. It has always been the general policy of this state that the governing officers of the cities and towns should be selected by a vote of the electors, and, generally speaking, statutes providing for filling vacancies in elective offices authorize the filling of such vacancies by appointment beyond the time required for holding a special election to avoid the inconvenience of such special election, and persons so appointed usually hold the office only until the vacancy can be filled by the electors at a general election. This general policy of the state is declared in the general election law, section 107, ch. 26, Comp. St. 1905, which is as follows: "Vacancies occurring in any state, judicial district, county, precinct, township, or any public elective office, thirty days prior to any general election, shall be filled thereat. Vacancies occurring in the office of county judge or justice of the peace shall be filled by election, but when the unexpired term does not exceed one year the vacancy shall be filled by appointment, as provided in section one hundred and three. Vacancies occurring in the office of any police mag-

istrate in cities where the unexpired term does not exceed one year shall be filled by appointment, but vacancies occurring in such office less than thirty days prior to any city election, and where the unexpired term exceeds one year, shall be filled by special election. And any person so appointed or elected under the provisions of this section shall hold his office for the unexpired term." And section 105 is as follows: "Appointments under the provisions of this chapter shall be in writing, and continue until the next election at which the vacancy can be filled and until a successor is elected and qualified, and be filed with the secretary of state, or proper township clerk, or proper county clerk respectively." Subdivision XLIX, sec. 129, art. I, ch. 13, Comp. St. 1905, providing for government of cities of the first class, authorized such cities "to provide for filling such vacancies as may occur in any elective office by appointment by the mayor, by the advice and consent of the council, to hold until the next general election." The office of alderman in the city of Lincoln is an elective office. The policy of the state is to provide means whereby the people shall be represented in that office by officials of their own selection, so far as possible, and it is the duty of the courts to keep that policy in mind when construing the various acts of the legislature in relation thereto, which may be thought indefinite, or to contain inconsistencies and conflicting expressions. The language of the general election law above quoted expressly applies to municipal offices, and in *State v. Hamilton,* 29 Neb. 198, it was held to apply to councilmen of the city of Lincoln. It, of course, applies in this case, unless the statute governing cities of the first class, or ordinances of the city of Lincoln authorized by that statute, furnish a different rule.

It is contended that the words "general election" used in this section of the election law mean the next election provided by law for the regular election to the office in question for the full term; that is, the next general election as applied to the office of alderman is not the next election at which municipal officers in general are elected,

but the election expressly appointed by statute for the election of aldermen, which in this case would be the municipal election of 1909. There are authorities apparently supporting the contention. *People v. Hardy*, 8 Utah, 68, 29 Pac. 1118, is cited and especially relied upon. The decision in that case is based upon what the court think to be a necessary construction of the wording of their statute. The office of county collector for Salt Lake county was in controversy. The statute provided that "annually on the first Monday in August there shall be a general election held in each precinct in the several counties for choosing all officers not otherwise provided for." The court concluded that the office of county collector was "otherwise provided for," because the statute creating the office provided that the county collector should be elected in 1878, and biennially thereafter. And although the statute provided that the election of county collector in 1878, and thereafter, should be "at the general election," this was considered to be such a special provision for election of county collectors that the words "the general election" in the statute providing for the filling of vacancies in that office must be construed to refer only to the regular election held in the even numbered years. If the construction which that court placed upon the statute seemed reasonable, it would still be of no assistance to us in this case in construing very different legislation. That court cites many authorities which it says "bear upon this question, but they depend largely upon the statutes of the several states where the decisions are rendered." In the sections of our statute above quoted the expression "the next general election" appears to be used interchangeably with the expression "the next election at which the vacancy can be filled." Other instances of the use of these expressions as the equivalent of each other may be found in our laws. The words "general election" have no uncertain meaning in this state, and, when used with reference to city elections without any qualifying words, must mean the election for municipal officers in general.

2. It is contended that the statute governing cities of the first class is inconsistent with the general election law in its provisions for filling vacancies in municipal offices, and requires a different construction. In *State v. Rankin*, 33 Neb. 266, the law, as declared in the first paragraph of the syllabus, was found to be: "Where a law creating an office specifically provides how vacancies occurring in such office shall be filled, such provision, and not the general law on the subject of vacancies, governs and controls the method of filling vacancies in such office." It is suggested that this principle has some application to the case at bar. It is said that the statute providing for the government of cities of the first class contains a section providing for the appointment of officers provided for in the act. This section referred to as containing this provision provides for the appointment of certain minor officers and agents of the city by the mayor, and their confirmation by the council, but contains no reference to the filling of vacancies in elective offices. The suggestion therefore cannot be regarded as seriously made. We have already called attention to the statute providing that the city council may regulate the filling of vacancies in elective offices by ordinance. Pursuant to this statute, the city council enacted an ordinance providing that "all vacancies in any elective office shall be filled by the mayor, by and with the assent of the council. Such appointee shall hold until the next general municipal election." It was contended upon the argument that this ordinance is not now operative for several reasons, but we do not find it necessary now to enter into this discussion. The general election law above quoted applies to the filling of vacancies in all elective offices. This, as before pointed out, is the plain purport of the language, and has been expressly held in *State v. Hamilton, supra*. In case of a conflict between the provisions of a general statute of this nature and the special provisions of a statute governing the filling of vacancies in a specified office, the special statute will control. *State v. Rankin, supra*. Unless the sections of the statute and the city ordinance

relied upon by the relator have special application in this case, and are sufficient to control the decision, there are no provisions of law applicable, except the general election law above quoted. The purpose of the statute is to supply a general rule applicable in all cases, unless for special reasons the legislature may provide a different method for filling vacancies that may occur in a specified office. Even in such cases the general statute must govern, if the provisions of the special act are capable of being reconciled therewith. Since the relator is entitled to have the vote in question canvassed, it is immaterial whether the appointment of the respondent was in regular form.

The writ will be issued as prayed, and the costs of the proceedings taxed against the respondents, Schroeder, Hoppe, Marshall, Houschildt, Bauer, Bishop, Quiggle, Sawyer, and George, who voted against the motion to canvass the vote. *State v. Carlson*, 72 Neb. 837.

WRIT ALLOWED.