246 P.2d 1046

**BENSON v. WILLIAMS, Mayor, et al.**

**No. 5452.**

Supreme Court of New Mexico.

July 30, 1952.

Douglass K. FitzHugh, Truth or Consequences, for appellant.

W. C. Whatley, W. B. Darden, LaFel E. Oman, Las Cruces, for appellees.

SADLER, Justice.

We are asked to determine whether in authorizing a city or town to effect a change in its name by a favorable vote of the qualified electors therein at the next "general election" following appropriate action by its governing body, or at a special election called for that purpose, as provided by 1941 Comp. § 14–701, L.1897, c. 40, § 1, the legislature contemplated by the term "general election" the biennial election for choosing state and county officials and national representatives in the Congress, as provided by Const. Art. 20, § 6.

While the plaintiff (appellant) argues her appeal under three separate and distinct points, there is but a single question involved and it is fairly stated in the opening paragraph of this opinion, to-wit: Did the legislature when it used the phrase "general election" have in mind the bien-

nial election mentioned in Const. Art. 20, § 6, where exactly the same words are employed? It reads:

"General elections shall be held in the state on the Tuesday after the first Monday in November in each even numbered year."

Our answer to the question propounded is—yes, it did. We think there can be not the slightest doubt about the correctness of this conclusion. Counsel for the plaintiff insists that an application of the doctrine of *ejusdem generis* to the present case will confine the questioned phrase to the general elections in municipalities held biennially throughout the state for the selection of mayor and other municipal officers as then provided by Code 1897, § 2466 and now by 1941 Comp. § 14–1402. The argument is not without force but it cannot prevail over the fact that in common understanding and parlance we have come to think of the one, fixed general election in the state which springs instantly to mind when the term is used as the statewide biennial election, held on Tuesday after the first Monday in November of each even numbered year when all state and county officials as well as our congressional representatives are elected.

In the first place at this very same session of the legislature, another act of similar import was passed authorizing a change of county seats. L.1897, c. 6, § 1, 1941

Comp. § 15–3201. The act with which we are here concerned, L.1897, c. 40, § 1, 1941 Comp. § 14–701, reads as follows:

"Whenever it is desired to change the name of any incorporated town or city in this state, the trustees or council thereof may submit the question of making such change to a vote of the qualified electors of such town or city at the next following *general election* or at a special election called for that purpose, notice of such election shall be published in some newspaper published in said town or city for at least two (2) weeks immediately prior to such election, stating the question to be voted upon and the proposed new name, which shall not be the name of any other incorporated town or city in this state at the date of the first publication of such notice." (Emphasis ours.)

The act authorizing change of county seats, L.1897, c. 6, § 1, 1941 Comp. § 15–3201, reads as follows:

"Whenever the citizens of any county in this state shall present a petition to the board of county commissioners signed by qualified electors of said county equal in number to at least one-half of the legal votes cast at the last preceding general election in said county, asking for the removal of the county seat of said county to some other designated place, which petition shall be duly recorded in the records of said county, said board shall make an order directing that the proposition to remove the county seat to the place named in the petition, be submitted to a vote of the qualified electors of said county at the next *general election,* if the same is to occur within one (1) year of the time of presenting said petition, otherwise at a special election to be called for that purpose at any time within two (2) months from the date of presenting said petition: * * *." (Emphasis ours.)

We have here, then, two statutes having the common purpose of effecting changes by election, in the one instance in a name and in the other in a county seat, enacted by the same legislature, at the same session, and using the same, identical language as to nature of the election, namely, "general election" and "special election" and, yet, if counsel for plaintiff be correct the phrase "general election" had one meaning when first used in the earlier enacted statute and still another meaning when used in the companion statute passed only a short time later. We think the legislature had in mind exactly the same meaning for the words as used in each statute.

Furthermore, an examination of the statutes of this state indicates there has been almost a studied effort on the part of the

legislature by appropriate language to avoid confusion in understanding what kind of election it intends. If it is a municipal election it ordinarily leaves no doubt on the subject. If it intends a general election it calls it such. Note the reference in 1941 Comp. § 14–801 to "the last regular election held in such village, town or city * * *."

Again, in § 14–909 a "regular biennial municipal election" is referred to. In a similar way in § 14–3616 the legislature mentions "a regular election for councilmen, aldermen, or other officers of such city, town or village * * *." In like fashion § 14–1301 refers to "all municipal elections" as does § 14–1305.

So when having in mind "general elections," the legislature makes that plain as we think it has done in the "change of names" and "change of county seats" statutes. See §§ 15–3504, 15–3505, 56–715 and 56–719. See, also, 1941 Comp. § 56–720, reading:

"The provisions of this act (chapter) shall not apply to elections for (justices of the peace, constables), school directors, municipal boards of education, officers of irrigation, drainage of (or) conservancy districts, officers of acequias or community ditches, city, town or village officers, or elections for issuance of bonds or other evidences of indebtedness by cities, towns, villages, counties, school districts, or other municipalities, unless otherwise provided herein or by the laws governing such elections. Provided, that in all municipal elections the duties specified in this act (chapter) as devolving upon the county clerk shall devolve upon the clerk of the municipality unless otherwise specifically provided by law, and all provisions hereof defining offenses and prescribing punishment therefor shall apply to any and all elections held in the state or in any subdivision or municipality thereof."

We are not unmindful that the term "general election" may have varying meanings according to the context. Eakle v. Board of Education, 97 W.Va. 434, 125 S.E. 165; Hudson v. Cummard, 44 Ariz. 7, 33 P.2d 591; Wing v. Ryan, 255 App. Div. 163, 6 N.Y.S.2d 825. At the same time we think the meaning here intended is plain.

Even if plaintiff were correct in her interpretation of the statute, that is, in contending that "general election" means the general municipal elections held biennially, and we think she is not, this would not necessarily deny the right to submit the question at the general election mentioned in Const. Art. 20, § 6. In other words, the phrase "general election" could with propriety be held not to refer exclusively to the general municipal elections

held biennially. In Groesbeck v. Bolton, 206 Mich. 403, 173 N.W. 542, the court held as indicated by paragraph 2 of the syllabus, as follows:

"The term 'general election,' found in Loc. Acts 1903, No. 475, § 27, declaring that the appointee to the office of justice of the peace of the city of Detroit shall hold office until the next general election, does not refer exclusively to the general November election adverted to in section 2, and a general biennial election fixed by the charter of the city for the spring of 1919 is a 'general election' within section 27, and hence an appointee to a vacancy could hold office only until that general election."

Counsel for plaintiff puts reliance on State ex rel. Castle v. Schroeder, 79 Neb. 759, 113 N.W. 192, and State ex rel. Kline v. Bridges, 20 Okl. 533, 94 P. 1065. We have examined the opinion in each case and both present factual situations quite different from that here disclosed. Neither furnishes a precedent for the position now urged upon us. Indeed, we think it is quite obvious that the legislature had in mind the general statewide election held in November of each even numbered year when it spoke of a "general election" in the "change of name" statute, just as it had that election in mind when it used the same words in the "change of county seats" statute.

The case was tried under the declaratory judgment statute. Only two witnesses were examined, Billye M. Allen, city clerk of the City of Hot Springs, called by plaintiff as an adverse witness, and Elfego Martinez, the county clerk of Sierra County, a witness for the plaintiff. The chief purpose in placing these witnesses on the stand was to identify certain minutes and records of proceedings before the Board of County Commissioners and the City Council of Hot Springs. At the beginning of the trial counsel for the defendants moved the court to dismiss the complaint upon the ground that the court lacked jurisdiction and the further ground that the complaint failed to state a cause of action upon which relief could be granted.

The court overruled the motion for the time being and after the two witnesses mentioned had given their testimony the motion was renewed. The record disclosed that the question submitted was for a change of name of the City of Hot Springs to "Truth or Consequences." It carried, 1262 voting for the change and 732 voting against it. The resolution and notice of election provided that the clerks and judges of election designated to serve in the change of name election should be the same as those designated by the county commissioners to act as judges and clerks at the general election. No attack was made either upon the time of calling the election for change of name or the suffi-

ciency of notice thereof published by the defendants.

The trial court after argument held the motion to dismiss the complaint was well taken and should be sustained. It entered a decree declaratory of the view that the complaint should be dismissed with prejudice, at the same time rendering an oral opinion in which the trial judge made some very apt observations from which we quote, as follows:

"I want to also point out that we have statutory mention of general election, 56–701, the general election held on the Tuesday following the first Monday of November. That is the election Code, Chapter 41, Laws of 1927.

"Now, no challenge was interposed here today as to fraud in the conduct of this election of any tampering with the ballots on this city problem of any election voter voting on the question, or of any legal voters whose right of suffrage was summarily or otherwise denied in there. Knowing the ability and aggressiveness of the attorney for the plaintiff if there had been such facts, he would have introduced evidence in that regard. Mr. FitzHugh is noted for being able to establish his contentions in Court.

"There is no showing of any person acting as an official was not a resident of the town of Hot Springs, or that they were guilty of any nonfeasance or misfeasance. I feel that no statute was violated. Article 7 does not prescribe who is to be named. It is not Prescribed how to choose them, or how to conduct the election. The governing body is only to submit such change to a vote of the qualified electors of said city at the next following general election or special election called for that purpose.

"Bi-partisan election officials chosen by the County Commissioners for the general election should afford officials who would be eminently fair to serve at an election where a proposed change of name was the issue. In the opinion of the Court such officials would be more unbiased than would be officials chosen by the then City of Hot Springs. Voting frauds on the matter of an election held for change of name purposes would be held to a very minimum in elections conducted by such bi-partisan officials. The Court would like to point out that it is a matter of common knowledge that polling places are crowded enough with the usual voting officials and voters, without having additional special officials se-

lected by the City to conduct the election on the change of name. I feel that it was very wise that the general election officials were chosen by the municipality to conduct such election.

"I believe that a maximum turn-out of citizens of the City was insured by having the election at the time of the general election. People will vote in a general election where they will not attend a school board election, special county bond election, or a municipal election. It is quite probable that the Legislature when it adopted Article 7, Chapter 14, NMSA, had that very point in mind.

"Accordingly, for all of the above reasons, the Court will enter a declaratory judgment adjudging, declaring and decreeing that the former City of Hot Springs, has legally, regularly and effectively changed its name to Truth or Consequences, New Mexico."

We think the learned trial judge was eminently correct and the judgment he rendered will be affirmed with costs of appeal to be taxed against the plaintiff (appellant).

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and COORS, JJ., concur.